1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
7                            AT TACOMA

8    JUAN C PARRA-INTERIAN,

9                        Petitioner,            CASE NO. 3:17-CV-05481-RBL-DWC

10         v.                                   REPORT AND RECOMMENDATION

11   MIKE OBENLAND,                             Noting Date: April 5, 2019

12                       Respondent.

13

14         The District Court has referred this action to United States Magistrate Judge David W.

15   Christel. Petitioner filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254,

16   seeking relief from his state court convictions and sentence. *See* Dkt. 3. The Court concludes the

17   state court's adjudication of Grounds 1-7, 8(b), 9, 12-14, 18(a), and 18(b) was not contrary to, or

18   an unreasonable application of, clearly established federal law. The Court also concludes

19   Grounds 8(a), 10, 11, 15-17, and 19 are not cognizable under § 2254. Accordingly, the

20   undersigned recommends the Petition be denied and a certificate of appealability be denied.

21   I.    **Background**

22         A.    Factual Background

23         The Court of Appeals of the State of Washington ("state court of appeals") summarized

24   the facts of Petitioner's case as follows:

REPORT AND RECOMMENDATION - 1

1    In June 2010, SA and her fiancé, Christopher McGowan, had a small party. After
     the party, SA and McGowan went to bed, had sexual intercourse, and went to
2    sleep. Later in the night, SA partially woke up because she felt someone touching
     her inner thighs and vagina. At first, SA was not alarmed because she believed
3    that McGowan was touching her. However, when the man attempted penile
     penetration and tore off her birth control patch, she knew it was not McGowan
4    and she became alarmed.

5    SA attempted to wake McGowan as the man left the room. Originally, SA
     believed that McGowan's brother had assaulted her because she thought
6    McGowan's brother was the only other adult male in the house at the time. When
     McGowan left the room, he was surprised to discover that Parra–Interian was also
7    in the house. SA suggested that McGowan smell their hands to determine which
     man assaulted her. McGowan smelled his brother's hands and did not smell
8    anything unusual. While this was happening, Parra–Interian left the house.
     McGowan confronted him in the driveway, but Parra–Interian would not let
9    McGowan smell his hands. Parra–Interian got in his car and left.

10   After police located Parra–Interian, he was brought to Kelso Police Department
     and place[d] in an interview room. After Parra–Interian left the interview room,
11   detectives found a birth control patch on the floor of the interview room. Forensic
     testing confirmed that both SA's and Parra–Interian's deoxyribonucleic acid
12   (DNA) was on the birth control patch. Testing also showed that McGowan's
     DNA profile from a "sperm fraction" was on Parra–Interian's fingers.
13
     The State charged Parra–Interian with second degree rape and first degree
14   burglary with sexual motivation. Parra–Interian was incarcerated in Cowlitz
     County Jail pending trial. While in jail, Parra–Interian approached another inmate,
15   Ronald White, and asked him to kill SA. White reported his conversations with
     Parra–Interian to the jail staff. White agreed to wear a wire, and did so on two
16   different occasions. White first wore a wire in jail during a discussion with Parra–
     Interian about planning SA's murder. White next wore a wire during a meeting
17   with Parra–Interian's wife where they confirmed the plan and White was given
     pictures of SA. Both conversations were recorded.
18
     The State then charged Parra–Interian with solicitation to commit first degree
19   murder and conspiracy to commit first degree murder. The State moved to join all
     charges for trial. Parra–Interian objected to a joint trial. The trial court joined the
20   charges for trial, finding that the charges were a series of acts that were connected
     together and that evidence would be cross admissible, although the evidence
21   introduced in separate trials may be more limited.

22   At trial, SA testified regarding the facts as related above. When asked to describe
     her consciousness level at the time of the assault, SA testified that on a scale of
23   one to ten, with one being "completely asleep" and ten being "all the way awake,"

24

REPORT AND RECOMMENDATION - 2

she was "a four" when she first felt someone running fingers up her legs and touching inside her vagina.

White also testified at trial. White testified about the conversations that took place during the undercover operations, as well as conversations he had with Parra–Interian that were not recorded. During his testimony, White made the following two statements:

> [WHITE]: I said, "What if [SA's] child's there?" "Do it."
>
> ....
>
> [WHITE]: Again, I said, "What if there—what if her child's there?" "That too."

After White's testimony, Parra–Interian renewed his motion to sever the charges and requested a mistrial on the rape and burglary charges. His attorney stated that after watching the jury during White's testimony, "you could see smoke coming out of [the jurors'] ears" and that the jurors were "visibly angered and visibly upset." He argued that the jury is "quite clearly prepared to convict him of everything they can possibly convict him on." The trial court denied Parra–Interian's motion, ruling that

> there was no objection at the particular time. Jurors are presumed to follow instructions, and I've seen more than once when jurors have expressed significant emotion during parts of trials, and that have come back and have followed instructions, and actually have—that returned verdicts that seemed contrary to their—to their emotions. So, I—I think jurors are scrupulous. That's been my experience, they're very scrupulous in their duties. They take seriously the fact that they're to—to look at each charge individually, and each element individually, and each element has to be proved beyond a reasonable doubt. The fact that there may be a strong emotion in hearing testimony on one day, we are planning on going until Monday with testimony, and then closing arguments would be at that time. So, I think any—I think emotions fade over time. Certainly they're going to remember testimony. So—so I think, all that being said, I'll—I'll deny the motion for severance and deny the motion for mistrial.

The jury found Parra–Interian guilty of all charges.

Dkt. 11, Ex. 3, pp. 2-4 (internal footnote and citations omitted); *see also State v. Parra-Interian*, 182 Wash. App. 1056 (2014).

B.  Procedural Background

1.  *Direct Appeal*

Petitioner challenged his Cowlitz County Superior Court ("trial court") convictions and sentence on direct appeal, raising two grounds for relief. Dkt. 11, Exs. 4, 5.[1] The state court of appeals affirmed Petitioner's convictions and sentence. *Id*. at Ex. 3. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *Id*. at Exs. 6, 7. On January 7, 2015, the state supreme court denied Petitioner's petition for review without comment. *Id*. at Ex. 8. The state supreme court issued the mandate on February 6, 2015. *Id*. at Ex. 9.

While the direct appeal was pending, the trial court modified the judgment and sentence to clarify that "the actual number of total confinement ordered [was] 159 + 24 months to life[.]" Dkt. 11, Ex. 10. Petitioner appealed the order modifying his judgment and sentence. *Id*. at Ex. 11. The state court of appeals dismissed the appeal on the ground of abandonment. *Id*. at Ex. 12. Petitioner also attempted to appeal the trial court's ruling regarding the return of property seized by the city police. *Id*. at Ex. 14. The state court of appeals found the trial court's decision was not appealable as a matter of right and converted the notice of appeal into a notice for discretionary review. *Id*. at Ex. 16. Petitioner was directed to file a motion for discretionary review. *Id*. On January 12, 2015, Petitioner's notice of discretionary review was dismissed for want of prosecution. *Id*. at Ex. 17.

---

[1] As Respondent does not allege the grounds raised in the Petition are unexhausted, the Court will not discuss the specific grounds for relief raised by Petitioner on direct appeal or in his state personal restraint petitions.

REPORT AND RECOMMENDATION - 4

2. *Personal Restraint Petitions*

Petitioner then filed multiple personal restraint petitions ("PRP") seeking state post-conviction relief. *See* Dkt. 11, Exs. 19, 20, 21. The state court of appeals consolidated and dismissed the PRPs on October 26, 2016. *Id*. at Ex. 24. Petitioner sought discretionary review from the state supreme court. *Id*. at Ex. 25. The state supreme court denied review on June 28, 2017. *Id*. at Ex. 26.

Petitioner filed an additional PRP on December 19, 2016. *Id*. at Ex. 27. The state court of appeals denied the PRP as time-barred. *Id*. at Ex. 29. Petitioner filed a motion for discretionary review with the state supreme court, which was denied on October 25, 2017. *See* Dkt. 40-1, p. 9. Petitioner's motion to modify the ruling was denied on March 7, 2018, and the state court of appeals issued the certificate of finality on March 19, 2018. *Id*. at pp. 2, 7-8.

3. *Federal Petition*

On June 21, 2017, Petitioner filed his Petition (Dkt. 3) raising the following nineteen grounds:

1.  Petitioner was denied a fair trial because he was prejudiced by the consolidation of unrelated charges.
2.  The state failed to prove second degree rape as charged.
3.  Petitioner's convictions were obtained based on insufficient DNA findings in violation of Petitioner's right to a fair trial.
4.  Trial court abused its discretion in ruling that evidence of an unrelated fire at the victim's home was admissible at trial.
5.  Counsel was ineffective when he failed to investigate and present witnesses related to the fire.
6.  The state failed to prove first degree burglary with sexual motivation.
7.  Petitioner's confrontation clause rights were violated when the state played a bodywire recording without providing Petitioner an opportunity for cross-examination.
8.  (a) The affidavit used to support authorization of the wiretap of Petitioner was insufficient.
    (b) Counsel was ineffective for failing to move for a *Franks* hearing to suppress the wiretap.
9.  The state engaged in prosecutorial misconduct.

REPORT AND RECOMMENDATION - 5

10. The search warrant was invalid and all evidence obtained in the search should have been suppressed because information that the informant, Ronald White, was unreliable was not provided to the judge who issued the search warrant.

11. Ronald White approached Petitioner wearing a wire and persuaded Petitioner to commit a crime resulting in entrapment.

12. Counsel was ineffective when he: (1) did not object to jail video; (2) did not request a 3.5 hearing on the alleged fire incident; (3) did not object to improper testimony; (4) failed to obtain a handwriting expert for a note that had an address on it; (5) did not object when evidence of a witness's sister's past was admitted, but evidence about the victim's child was given and objected to with limiting instruction; (6) failed to ask for a suppression hearing on the search warrant; (7) failed to request a mistrial based on juror misconduct; and (8) neglected to call or interview witnesses that would have corroborated Petitioner's story regarding the fire. Taken together the errors show prejudice.

13. Petitioner's statements made to Ronald White were obtained in violation of Petitioner's Sixth Amendment right to counsel.

14. The state committed a *Brady* violation when it failed to produce evidence related to the fire.

15. Petitioner was unlawfully arrested in violation of the Fourth Amendment.

16. Petitioner's conditions of confinement violated his First, Fifth, Eighth, and Fourteenth Amendment rights.

17. Petitioner was not provided with proper notice of the seizure of property in violation of the Fourteenth Amendment.

18. (a) Petitioner's right to a fair trial was violated when the State knowingly used an informant who has alleged ties to a white supremacist group and made racist comments in the past.

(b) Petitioner's right to a fair trial was violated when a juror, whose daughter was raped and murdered by a Mexican, engaged in juror misconduct and the entire jury was not dismissed.

19. Petitioner was not given notice or the right to be heard regarding the forfeiture of items seized from his home.

Respondent filed an Answer on August 8, 2017, which was served on Petitioner. Dkt. 8. In the Answer, Respondent addressed only the first four grounds raised in the Petition. *See id.* The Court directed Respondent to file a supplemental answer addressing all grounds raised in the Petition. *See* Dkt. 22. Respondent filed a Supplemental Answer on February 2, 2018. Dkt. 26. Petitioner filed Responses to the Answer and Supplemental Answer. *See* Dkt. 17, 21, 32. The Court appointed counsel to represent Petitioner because Petitioner provided evidence that he

1    could not read or write in English. Dkt. 30. Petitioner's counsel filed a Supplemental Reply in

2    Support of Petition for Writ of Habeas Corpus on May 29, 2018. Dkt. 37.

3            After reviewing the Petition, Answers, and Responses, the Court determined Respondent

4    had not responded to two grounds raised in the Petition and, on June 28, 2018, the Court directed

5    Respondent to file a second supplemental answer. Dkt. 38. Respondent filed the Second

6    Supplemental Answer on July 26, 2018. Dkt. 40, 41. The Court again directed Respondent to

7    provide a supplemental answer regarding Ground 13 and, on October 22, 2018, Respondent filed

8    an additional supplemental answer and a supplement to the state court record. Dkt. 43. Petitioner

9    has not filed any additional responses.[2]

10   **II.    Discussion**

11           Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

12   basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

13   decision that was contrary to, or involved an unreasonable application of, clearly established

14   Federal law, as determined by the Supreme Court of the United States." In interpreting this

15   portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

16   clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion

17   opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

18   "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite

19   result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

20

21   _____

22        [2] Petitioner's counsel argues the state court of appeal's October 26, 2016 decision dismissing Petitioner's
     consolidated PRPs is an unreasonable application of clearly established law. *See* Dkt. 37 (citing Dkt. 11, Ex. 24).
     However, the state supreme court issued the last reasoned decision regarding the grounds raised in Petitioner's
23   consolidated PRPs. *See* Dkt. 11, Ex. 26. Therefore, this Court must determine if the state supreme court, not the state
     court of appeals, reasonably applied clearly established law. *See Ali v. Grounds*, 236 F. Supp. 3d 1241, 1250 (S.D.
     Cal. 2017) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804–06 (1991) ("The relevant decision for purposes of federal
24   habeas review is the last reasoned state court decision.")).

1     Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because

2     that court concludes in its independent judgment that the relevant state-court decision applied

3     clearly established federal law erroneously or incorrectly. Rather, that application must also be

4     unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable

5     application of Supreme Court precedent occurs "if the state court identifies the correct governing

6     legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state

7     prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an

8     unreasonable application of Supreme Court precedent "'if the state court either unreasonably

9     extends a legal principle from [Supreme Court] precedent to a new context where it should not

10     apply or unreasonably refuses to extend that principle to a new context where it should apply.'"

11     *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

12     The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts

13     to presume the correctness of state courts' factual findings unless applicants rebut this presumption

14     with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court

15     decisions under §2254(d)(1) is "limited to the record that was before the state court that

16     adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

17     A.  Misjoinder of Charges (Ground 1)

18     In Ground 1, Petitioner maintains his right to a fair trial was violated when the trial court

19     joined, in one trial, Petitioner's charges of second degree rape and first degree burglary with his

20     charges of solicitation to commit first degree murder and conspiracy to commit first degree

21     murder. Dkt. 3.

22     The Court "may grant habeas relief on a joinder challenge only 'if the joinder resulted in

23     an unfair trial.'" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (quoting *Sandoval v.*

24

*Calderon*, 241 F.3d 765, 771–72 (9th Cir. 2001)); *see Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991).[3] Improper joinder "rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). "The requisite level of prejudice is reached only 'if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.'" *Davis*, 384 F.3d at 638 (quoting *Sandoval*, 241 F.3d at 772); *see also Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir.1998).  In evaluating prejudice, the Ninth Circuit has focused on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another. *Davis*, 384 F.3d at 638.

In finding the trial court did not abuse its discretion in refusing to sever the joined charges, the state court of appeals stated:

> We review a trial court's decision denying a CrR 4.4(b) motion to sever charges for a manifest abuse of discretion. *State v. Eastabrook*, 58 Wn. App. 805, 811, 795 P.2d 151, review denied, 15 Wn.2d 1031 (1990). Charges may be joined if they are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a)(2). However, even offenses properly joined under CrR 4.3 may be severed under CrR 4.4 whenever the trial court "determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b); *State v. Bythrow*, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). A defendant seeking severance of properly joined charges bears the burden of demonstrating that "a trial involving [all] counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *Bythrow*, 114 Wn.3d at 718.
>
> A defendant is prejudiced by joined offenses if (1) the defendant has to present possibly conflicting defenses of the offenses; (2) the jury may infer guilt on one charge from evidence presented on another charge; or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the

---

[3] Although Supreme Court precedent provides the only relevant source of clearly established federal law for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000).

evidence would not support every charge. *Bythrow*, 114 Wn.2d at 718. In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) the court's instructions to the jury to consider each count separately, and (4) the cross admissibility of evidence for the other charges even if they were tried separately. *State v. Russell*, 125 Wn.2d 24, 63, 822 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). "[A]ny residual prejudice must be weighed against the need for judicial economy." *Russell*, 125 Wn.2d at 63.

Here, the trial court properly joined the charges for trial. Parra-Interian's acts were clearly connected because solicitation and conspiracy to commit murder were meant to prevent SA, the victim of his rape charges, from testifying. Therefore, the trial court did not abuse its discretion by joining these charges with the rape and burglary charges for trial. Accordingly, the relevant question is whether Parra-Interian has met his burden to show that the trial court manifestly abused its discretion by not severing the charges because the joint trial was so manifestly prejudicial it outweighed the benefits of a joint trial.

Parra-Interian fails to meet his burden to show manifest prejudice according to the *Russell* factors. First, although Parra-Interian alleges that the State's evidence was significantly stronger on the solicitation and conspiracy charges, he is incorrect. Second, even in a joint trial, Parra-Interian's defenses to each count were clear. Third, the trial court correctly instructed the jury to consider each count separately. Fourth, the evidence on each count would have been cross admissible. Given these factors, any potential prejudice arising from a joint trial does not outweigh the need for judicial economy in this case. *Russell*, 125 Wn.2d at 63.

Regarding the strength of the State's evidence on each count, Parra-Interian's argument that the State's evidence was weaker on the rape case relies on the mistaken assumption that a case based on circumstantial evidence is weaker than a case based on direct evidence. It is well-established that circumstantial and direct evidence are considered equal. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Here, the State had strong circumstantial evidence supporting the rape and burglary charges: Parra-Interian had no reason to be in the house because the party was over and everyone was asleep at the time he entered the house; he was the only person awake at the time of the rape; he refused to allow McGowan to smell his hands; SA's birth control patch with his and SA's DNA was found in the interrogation room he had been in; and he had McGowan's sperm on his fingers. Similarly, the State had strong direct evidence against Parra-Interain for the conspiracy and solicitation charges: White's testimony and the wiretap recordings. Under the law, the strength of the State's strong circumstantial evidence on the rape charge is equivalent to the strength of the State's direct evidence on the solicitation and conspiracy charges. Accordingly, there was not a disparity in the strength of the State's evidence that demonstrates a joint trial resulted in manifest prejudice.

REPORT AND RECOMMENDATION - 10

1

2       Regarding the clarity of defenses on each count, Parra-Interian's defenses were
        clear. Parra-Interian essentially presented general denials on all counts. [Fn.
3       Parra-Interian argues that he denied the rape, admitted to witness tampering, and
        denied having the intent to commit murder. His argument might have some merit
4       if the State had charged lesser-included offenses on the solicitation and
        conspiracy charges, but the State did not.] Thus, there was little to no risk that the
        jury would have been confused by his general denial defense on all counts.

5

6       Regarding the jury instructions, there is no dispute that the trial court properly
        instructed the jury to consider the evidence on each count separately. We presume
7       that juries follow the trial court's instructions. *Russell*, 125 Wn.3d at 84.
        Therefore, because we presume that the jurors considered the evidence on each
8       count separately, the court's instruction to the jury reduced any potential prejudice
        from a joint trial.

9

10      Finally, the evidence on the charges was cross admissible. Parra-Interian concedes
        that some evidence of each charge would have been admissible in a trial on the
        other charge; however, he argues that because the full extent of the evidence may
11      not have been admissible in the other trial, a joint trial was manifestly prejudicial.
        Parra-Interian specifically argues that the trial court erred by refusing to sever the
12      charges because the jury's reaction to White's testimony, in and of itself, resulted
        in a manifest prejudice that required the trial court to grant his motion for a
13      mistrial and sever the charges. We disagree.

14      As we noted above, the State had a very strong circumstantial case on the rape.
        Further, the State did not even mention White's testimony regarding killing the
15      child during its closing argument. Outside of Parra-Interian's assertions during his
        argument on the motion for a mistrial and to sever, there is nothing in the record
16      to support Parra-Interian's contention that the sole reason the jury convicted
        Parra-Interian for the rape and burglary was because of White's testimony
        regarding killing the child.

17

18      And Parra-Interian did not object to the testimony at the time that it was given,
        nor did he request that the trial court instruct the jury to disregard the testimony.
19      We recognize that declining an instruction to disregard prejudicial testimony is a
        legitimate trial tactic meant to avoid drawing additional attention to prejudicial
20      evidence. *In re Pres. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).
        Because Parra-Interian declined to draw additional attention to the prejudicial
21      testimony, and the testimony was not mentioned again, the prejudicial nature of
        the testimony was mitigated. Moreover, the jury was specifically instructed to
22      decide the case based on the facts and that they "must not let [their] emotions
        overcome [their] rational thought process." 7B RP at 1309. Again, we must
23      presume that the jury followed this instruction and did not decide the case based
        on their initial emotional reaction to White's testimony. Accordingly, Parra-

24

1    Interian has failed to demonstrate manifest prejudice resulting from White's
     testimony regarding Parra-Interian's instructions to kill SA's child.
2
     Overall, while Parra-Interian may have suffered some prejudice from a joint trial,
3    the rules do not prohibit a joint trial simply because the defendant suffers some
     prejudice. The law requires that the defendant demonstrate a manifest prejudice
4    that denied him a fair trial. Here, in light of the *Russell* factors, Parra-Interian has
     failed to meet his burden to prove that a joint trial was so prejudicial that it
5    outweighed the benefits of judicial economy in this case. Accordingly, Parra-
     Interian has failed to show that the trial court abused its discretion by refusing to
6    sever the properly joined charges.

7    Dkt. 11, Ex. 3, pp. 5-9.

8           Petitioner asserts joinder of the four charges was so prejudicial it outweighed the benefits

9    of a joint trial because (1) the evidence supporting the rape and burglary charges was much

10   weaker than the evidence supporting the solicitation and conspiracy charges, creating a great

11   disparity between the strength of evidence on the two sets of charges; (2) the defenses to the two

12   sets of charges necessarily created confusion; (3) the applicability of evidence from one set of

13   charges to the other was minimal at best; and (4) testimony regarding the possible death of the

14   victim's child in connection with the solicitation count predisposed the jury to convict Petitioner

15   of any charge. *See* Dkt. 37, pp. 4-6; *see also* Dkt. 17, 21.

16          First, Petitioner contends there was a great disparity between the strength of the evidence

17   supporting the two sets of charges. However, Petitioner has not shown the evidence was much

18   weaker on the rape and burglary charges. *See* Dkt. 37, p. 5. As to the rape and burglary charges,

19   the State provided evidence showing: (1) Petitioner was in the victim's (S.A.) home, uninvited;

20   (2) S.A's birth-control patch, which was taken off of her during the incident, was located in the

21   police interview room where Petitioner had been questioned; (3) the birth-control patch was

22   linked to both Petitioner and S.A. through laboratory testing; and (4) S.A.'s fiancé's sperm was

23   on Petitioner's hand. *See* Dkt. 11, Ex. 20; Dkt. 12, Ex. 32, Ex. 33, pp. 234, 244-45, Ex. 34, pp.

24

1    322-23, Ex. 36, pp. 489, 515-17, 566-80. Evidence regarding the solicitation and conspiracy to

2    commit murder charges included: (1) Ronald White's testimony regarding Petitioner's

3    conversations with White about killing S.A. because if S.A. did not appear at trial the rape and

4    burglary charges would be dismissed; and (2) Petitioner's recorded statements to White

5    requesting White kill S.A. *See* Dkt. 12, Ex. 32, Ex. 37, pp. 658-78, Ex. 38, pp. 844-46, 848, 850,

6    855, Ex. 39, pp. 925-55. While the rape and burglary charges include more circumstantial

7    evidence, the evidence was strong. The evidence placed Petitioner at the scene of the crime and

8    objective DNA testing linked him to the crime. Based on a review of the evidence, the Court

9    finds Petitioner has not shown there was a great disparity in the strength of the evidence

10   supporting both sets of charges.

11        Second, Petitioner has not shown his defenses to the two sets of charges created

12   confusion. *See* Dkt. 37, p. 5. In arguing the cases should not be joined, Petitioner's trial counsel

13   stated the ability to defend against the rape and burglary charges would be nothing like the

14   ability to defend against the solicitation and conspiracy charges. *See* Dkt. 11, Ex. 32, p. 19. Yet,

15   Petitioner did not explain how the defenses would create confusion. *Id*. Further, counsel for

16   Petitioner simply asserted the evidence failed to prove Petitioner was guilty of both sets of

17   charges beyond a reasonable doubt. *Id*. at Ex. 42, pp. 1338-1411. As Petitioner asserted nothing

18   more than general defenses of innocence, he has not shown the defenses for the two sets of

19   charges created confusion for the jury.

20        Third, Petitioner has not shown the applicability of evidence for one set of charges was

21   minimal for the other set of charges. *See* Dkt. 37, p. 5. Petitioner cites to argument from

22   Petitioner's trial counsel that all the evidence regarding the rape would not be included in a trial

23   on the solicitation and conspiracy to commit murder charges. *Id*. (citing Dkt. 11, Ex. 32, p. 21).

24

1  The trial court, however, found there would be cross-admissibility of the evidence because the

2  nature of the rape and burglary charges would be introduced in the solicitation and conspiracy

3  trial. Dkt. 12, Ex. 32, p. 25. Further, the trial court noted, if there was a separate trial on the

4  solicitation and conspiracy charges, evidence beyond just the nature of the charges and the

5  potential penalty for the rape and burglary charges might be introduced. *Id.*

6        Here, Petitioner was charged with rape and burglary. *See* Dkt. 11, Ex. 1. He was later

7  charged with solicitation to commit murder and conspiracy to commit murder after evidence

8  showed he solicited a fellow inmate, White, to murder S.A., the victim in his rape case, so that

9  the rape and burglary charges would be dismissed. *See id.* at Ex. 2; Dkt. 12, Ex. 38, pp. 844-46,

10  848, 850, 855. As the solicitation and conspiracy charges involved the same witness as the rape

11  and burglary charges and the alleged motive for the solicitation and conspiracy charges was to

12  eliminate the rape victim to ensure a dismissal of the rape and burglary charges, the Court finds

13  Petitioner has failed to show the cross-admissibility of the evidence was minimal. *See United*

14  *States v. Meling*, 47 F.3d 1546, 1557 (9th Cir.1995) (attempt to intimidate witnesses shows

15  "consciousness of guilt—second only to a confession in terms of probative value"); *United*

16  *States v. Dorsey*, 2009 WL 959324, at *3 (W.D. Wash. Apr. 6, 2009) (finding joinder bolstered

17  when the government alleges the shooting was committed in furtherance of the car theft

18  conspiracy because the nature of the charges invites the jury to consider the evidence of witness

19  tampering in its assessment of the other counts).

20        Last, Petitioner has not shown the testimony regarding the possible death of S.A.'s child

21  in connection with the solicitation and conspiracy counts predisposed the jury to convict

22  Petitioner of any charge. *See* Dkt. 37, pp. 5-6. There is evidence the jury had an emotional

23  response to evidence that showed, when soliciting White to murder S.A., Petitioner told White to

24

1   kill S.A.'s child, if the child was present. *See* Dkt. 12, Ex. 38, pp. 877-86. However, there is no

2   evidence the jurors were unable to fairly consider all the evidence for each count charged. The

3   jury was provided with specific instructions regarding how to consider the counts and evidence

4   and a jury is presumed to follow instructions. *See id*. at Ex. 42, pp. 1305-23; *Penry v. Johnson*,

5   532 U.S. 782, 799 (2001) (jury is generally presumed to follow the instructions it is given).

6   Additionally, Petitioner's trial counsel did not object to White's testimony regarding the child.

7   Dkt. 12, Ex. 38, pp. 850-51. Petitioner's trial counsel was also provided with an opportunity to

8   re-question White about his testimony regarding Petitioner directing White to kill the child, but

9   declined. *Id*. at 884-85. Further, as discussed above, the evidence presented to the jury regarding

10  the rape and burglary charges was not weak. As such, Petitioner has not shown one statement

11  related to the solicitation charge caused the jury to find Petitioner guilty of any charge.

12          For the above stated reasons, Petitioner has failed to show he suffered manifest prejudice

13  from the joinder of his two sets of charges. Therefore, the Court finds Petitioner failed to

14  demonstrate the state court's conclusion finding Petitioner did not suffer manifest prejudice

15  when his charges were joined was contrary to, or was an unreasonable application of, clearly

16  established federal law, or was an unreasonable determination of the facts in light of the evidence

17  presented in this case. Accordingly, Ground 1 should be denied.

18          B.   Sufficiency of Evidence (Grounds 2, 3, 6)

19          In Grounds 2, 3, and 6 of the Petition, Petitioner contends there was insufficient evidence

20  presented to the jury to convict him of second degree rape and first degree burglary. *See* Dkt. 3.

21  The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond

22  a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of

23  insufficiency of the evidence to support a conviction, the reviewing court must decide "whether,

24

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

> 1. *Ground 2*

In Ground 2, Petitioner alleges there was insufficient evidence to convict him of second degree rape because there was no evidence the victim, S.A., was physically helpless. Dkt. 3. The state court of appeals found there was sufficient evidence to convict Petitioner of second degree rape, stating:

> Parra-Interian also argues that there was insufficient evidence to support the jury's verdict on the rape charge because the State failed to prove that SA was physically helpless. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. All "reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are deemed equally reliable. *Delmarter*, 94 Wn.2d at 638. "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 72, 794 P.2d 850 (1990).
>
> To convict Parra-Interian of second degree rape, the State had to prove that (1) Parra-Interian engaged in sexual intercourse and (2) the victim was "incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). Sexual intercourse occurs upon any penetration, however slight, and includes penetration by an object. RCW 9A.44.010(1)(a)-(b). Physically helpless means "a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act." RCW 9A.44.010(5). It is

established that a person who is asleep is physically helpless. *State v. Puapuaga*, 54 Wn. App. 857, 861, 776 P.2d 170 (1989).

Here, SA's testimony on direct examination supports the reasonable inference that because she was partially woken up by Parra-Interian digitally penetrating her, Parra-Interian had digitally penetrated while she was sleeping. Taking the evidence in the light most favorable to the State, sufficient evidence supports the rape conviction. Parra-Interian argues that SA's testimony on cross-examination implied that Parra-Interian did not penetrate her until after she was partially awake. However, it is the jury's responsibility to resolve conflicting testimony. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Accordingly, Parra-Interian's sufficiency of the evidence claim fails.

Dkt.11, Ex. 3, pp. 9-10.

Petitioner asserts there was insufficient evidence to convict him of second degree rape because S.A. testified she was awake when the penetration occurred and was, therefore, not helpless. *See* Dkt. 3, 17, 21, 37. Petitioner was charged with rape in the second degree under Revised Code of Washington ("RCW") 9A.44.050(1)(b). *See* Dkt. 11, Ex. 1. Under this code provision, to convict Petitioner of second degree rape, the State had to prove (1) Petitioner engaged in sexual intercourse[4] and (2) the victim was "incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). In Ground 2, Petitioner contends there was insufficient evidence to prove the second prong. *See* Dkt. 3, 17, 21, 37.

Viewed in the light most favorable to the prosecution, the evidence shows, after S.A. fell asleep, she felt somebody touching her inner thighs, pelvic area, and vagina. Dkt. 12, Ex. 32, pp. 240-41. She stated she was not all the way awake when the touching began and the touching included touching inside and outside of her body. *Id.* S.A. testified someone was digitally penetrating her vagina. *Id.* at p. 242. She said she was still mostly asleep, but more alert. *Id.* S.A. did not become fully awake and alert until the individual began to pull off her birth-control

[4] Under Washington law, sexual intercourse occurs upon any penetration of the vagina or anus, however slight, and includes penetration by an object. RCW 9A.44.010(1)(a)-(b).

1    patch. *Id*. at p. 244. On cross-examination, S.A. testified that she awoke to someone touching her

2    thighs. Dkt. 12, Ex. 34, p. 274. She stated she was not fully awake when she felt digital

3    penetration, but she thought it was her fiancé so she was "okay with it." *Id*. at p. 278.

4         The Ninth Circuit has found a "'reasonable jury may conclude that a person who is asleep

5    when a sexual act begins is physically unable to decline participation in that act.'" *United States*

6    *v. Fasthorse*, 639 F.3d 1182, 1184 (9th Cir. 2011) (quoting *United States v. Wilcox,* 487 F.3d

7    1163, 1169 (8th Cir.2007)). "If the victim testifies that she woke up while the sexual act was

8    ongoing, this provide[s] sufficient evidence for the jury to conclude that penetration occurred

9    while she was asleep." *Fasthorse*, 639 F.3d at 1184 (internal quotations omitted, alteration in

10   original). Here, the victim, S.A., testified that she awoke to touching, which included touching of

11   her thighs and the inside and outside of her vagina. Based on the evidence, the jury could

12   reasonably conclude S.A. was digitally penetrated while she was asleep because she awoke while

13   the sexual act was ongoing. Therefore, there was sufficient evidence to find S.A. was physically

14   helpless when some digital penetration occurred. *See United States v. James*, 810 F.3d 674, 681

15   (9th Cir. 2016) (internal quotations omitted) ("whether a victim is physically helpless at any

16   given moment is largely a question of fact for the jury to decide").

17        Petitioner has, thus, failed to show the state court's conclusion finding there was

18   sufficient evidence showing S.A. was physically helpless was contrary to, or was an

19   unreasonable application of, clearly established federal law, or was an unreasonable

20   determination of the facts in light of the evidence presented in this case. Accordingly, Ground 2

21   should be denied.

22

23

24

2. *Ground 3*

In Ground 3, Petitioner contends there was insufficient evidence to convict him of second degree rape because there were no DNA findings which showed Petitioner engaged in sexual intercourse with S.A. *See* Dkt. 3, p. 8; Dkt. 17, 21.

Respondent does not cite, nor does the Court find, a state court decision adjudicating Ground 3. *See* Dkt. 8. Respondent does not assert this ground is unexhausted; however, even if Ground 3 is unexhausted, the Court may proceed to the merits of an unexhausted habeas petition if the ultimate dismissal of a petition is a foregone conclusion. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); see also 28 U.S.C. § 2254(b)(2), (3).

Under Washington law, sexual intercourse occurs upon any penetration of the vagina or anus, however slight, and includes penetration by an object. RCW 9A.44.010(1)(a)-(b).

At trial, there was evidence that, on the night of the incident, S.A. and Christopher McGowan, S.A.'s fiancé, engaged in sexual intercourse and McGowan ejaculated inside S.A. *See* Dkt. 12, Ex. 33, pp. 230, 236-37, Ex. 35, pp. 419-20. S.A. testified that, after engaging in sexual intercourse with McGowan, she fell asleep, and then she felt somebody touching her inner thighs and vagina and the person digitally penetrated her vagina. *Id.* at Ex. 33, pp. 240-42. She also stated her birth-control patch was taken off her skin during the incident. *Id.* at p. 244. The State presented evidence showing Petitioner was in S.A.'s home at the time of the incident. *See* Dkt. 12, Ex. 35, pp. 358, 360, 423-24. Further, S.A.'s birth-control patch was found in a police interrogation room where Petitioner had been questioned. *Id.* at Ex. 34, pp. 322-23, Ex. 35, p. 489-95, Ex. 36, pp. 512-15. The birth-control patch contained both S.A.'s and Petitioner's DNA.

1  *Id.* at Ex. 36, pp. 566-71. There was also evidence McGowan's sperm was present on Petitioner's

2  left hand. *Id*. at pp. 571-86.

3       Based on the evidence presented at trial, viewed in the light most favorable to the State, a

4  rational trier of fact could find Petitioner engaged in sexual intercourse with S.A., as defined

5  under the RCW. Petitioner has not shown, nor does the Court find, additional DNA evidence was

6  required to find Petitioner engaged in sexual intercourse with S.A. Therefore, Petitioner has

7  failed to show there was insufficient evidence to convict him of second degree rape because

8  there were no DNA findings which showed Petitioner engaged in sexual intercourse with S.A. *See*

9  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (internal citation omitted) ("Circumstantial

10  evidence and reasonable inferences drawn from it may be sufficient to sustain a conviction.");

11  *People of Territory of Guam v. Atoigue*, 36 F.3d 1103 (9th Cir. 1994) (finding rational inferences

12  drawn from testimony was sufficient to prove sexual penetration).

13       The Court finds Petitioner has failed to show he is entitled to habeas relief on Ground 3.

14  Accordingly, Ground 3 should be denied.

15            3.  *Ground 6*

16       In Ground 6, Petitioner alleges there was insufficient evidence to convict him of first

17  degree burglary with sexual motivation. Dkt. 3, pp. 31-32; Dkt. 37, pp. 9-11. The state supreme

18  court found there was sufficient evidence to convict Petitioner of first degree burglary with sexual

19  motivation, stating:

20       Mr. Parra-Interian next asserts that the evidence was insufficient to convict him of
         first degree burglary with sexual motivation. To prevail on this issue, Mr. Parra-
21       Interian must show that the evidence, when viewed in the light most favorable to
         the State, would not allow a rational juror to find all of the elements of the crime
22       beyond a reasonable doubt. *State v. Vasquez*, 178 Wn.2d 1, 6, 309 P.3d 318 (2013).
         And the reviewing court defers to the trier of fact on issues of conflicting testimony,
23       credibility of witnesses, and the persuasiveness of the evidence. *State v. Andy*, 182
         Wn.2d 294, 303, 340 P.3d 840 (2014).

24

1

2     A person is guilty of first degree burglary if, with the intent to commit a crime, he
      unlawfully enters a building, and while inside that building, assaults another person.
3     RCW 9A.52.020(1)(b). Viewing the evidence under the proper standard, there was
      significant evidence in this case that Mr. Parra-Interian unlawfully entered or
4     remained in the victim's home and raped her while she was sleeping next to her
      fiancé in her bedroom. In particular, the victim woke when she felt a man's fingers
5     penetrating her vagina, and the man attempted penile intercourse, tearing off the
      victim's birth control patch. The man fled as the victim suddenly realized he was
6     not her fiancé. The victim's fiancé confronted Mr. Parra-Interian in the house and
      on the driveway. The victim's birth control patch was found in the police station
7     room where the officers interviewed Mr. Parra-Interian. The patch had both the
      victim's and Mr. Parra-Interian's DNA. The victim's fiancé's DNA was found on a
8     sperm sample obtained from Mr. Parra-Interian's fingers (the victim and her fiancée
      (sic) had engaged in sexual intercourse before falling asleep). Proof of the rape
9     supports the sexual motivation finding. Mr. Parra-Interian's challenge to the
      sufficiency of the evidence is meritless.

10    Dkt. 11, Ex. 26, pp. 2-3.

11         Petitioner was charged and convicted of burglary in the first degree with sexual motivation.

12    *See* Dkt. 11, Ex. 1. As discussed by the state supreme court, under Washington law, a "person is

13    guilty of burglary in the first degree if, with intent to commit a crime against a person or property

14    therein, he or she enters or remains unlawfully in a building and . . . assaults any person." RCW

15    9A.52.020(1)(b).[5]

16         Evidence presented at trial showed Petitioner was in S.A.'s home at the time of the

17    incident. *See* Dkt. 12, Ex. 35, pp. 358-59, 360, 423-24. Both S.A. and McGowan testified that

18    they did not invite Petitioner to their home on the night in question. *See id*. at Ex. 33, p. 234, Ex.

19    34, pp. 262-65, Ex. 35, pp. 443-44. At the time the occupants in the home went to bed, Petitioner

20    was not in the home and McGowan testified there was no reason for Petitioner to be in the home.

21    *Id*. at Ex. 35, pp. 354-55, 417-19, 425. S.A.'s sister, Ashley Kruis, testified Petitioner came into

22

23         [5] "An assault is an offensive, intentional touching." *State v. Barnes*, 195 Wash. App. 1008, at *5 (2016). A
      rational trier of fact could conclude that forcibly compelling someone to have nonconsensual sex constitutes an
24    assault. *See id*. Therefore, evidence of rape would be sufficient to meet the assault requirement.

REPORT AND RECOMMENDATION - 21

1    the home after she was asleep, woke Kruis, and asked, "Where are they?" *Id*. at pp. 358-59.

2    Kruis pointed to S.A.'s room and then went back to sleep. *Id*. at p. 359. Additionally, as

3    discussed above, there was sufficient evidence for a jury to find Petitioner raped S.A. *See* Section

4    II.B.1 & 2, *supra*.

5        Viewing evidence in the light most favorable to the State, a jury could infer Petitioner

6    entered S.A.'s home, uninvited, after all the occupants had gone to sleep. He woke an occupant

7    in the home, asked for S.A.'s location, and then raped S.A. Therefore, there was evidence in

8    which a rational trier of fact could reasonably concluded Petitioner unlawfully entered S.A.'s

9    home with the intent to rape her, committing burglary in the first degree with sexual motivation.

10   *See Jones v. Wood,* 207 F.3d 557, 563 (9th Cir. 2000) (finding evidence that was almost entirely

11   circumstantial and relatively weak was sufficient to support the conviction); *Cortez v. Patrick*,

12   2011 WL 6210391, at *12 (C.D. Cal. Aug. 25, 2011), *report and recommendation adopted*, 2011

13   WL 6210378 (C.D. Cal. Dec. 12, 2011) (finding sufficient evidence to convict of burglary where

14   the jury could have inferred the petitioner gained entry to  a hotel room on false pretenses for the

15   purpose of theft).

16       Petitioner has, thus, failed to show the state court's conclusion finding there was

17   sufficient evidence to convict Petitioner of burglary in the first degree with sexual motivation

18   was contrary to, or was an unreasonable application of, clearly established federal law, or was an

19   unreasonable determination of the facts in light of the evidence presented in this case.

20   Accordingly, Ground 6 should be denied.

21

22

23

24

1          4.  *Conclusion*

2          For the above stated reasons, the Court finds Petitioner has failed to show he is entitled to

3    habeas relief on his claims that there was insufficient evidence to convict him. Accordingly, the

4    Court finds Grounds 2, 3, and 6 should be denied.

5          C.  State Evidentiary Rulings (Ground 4)

6          In Ground 4, Petitioner alleges his right to a fair trial was violated when the trial court

7    admitted evidence about a fire that was unrelated to the crimes charged against him. Dkt. 3, pp. 10,

8    28.

9          The Court does not "review questions of state evidence law. On federal habeas [the

10   Court] may only consider whether the petitioner's conviction violated constitutional norms."

11   *Jammal v. Van de Kamp*, 926 F.3d 918, 919 (9th Cir. 1991); *Estelle v. McGuire*, 502 U.S. 62, 67-

12   68 (1991) ("it is not the province of a federal habeas court to reexamine state-court

13   determinations on state law questions"). "[F]ailure to comply with the state's rules of evidence is

14   neither a necessary nor a sufficient basis for granting habeas relief." *Id.*; *Marshall v. Longberger*,

15   459 U.S. 422, 438 n. 6 (1983) (citing *Spencer v. Texas*, 385 U.S. 554, 564 (1967)) ("the Due

16   Process Clause does not permit the federal courts to engage in a finely-tuned review of the

17   wisdom of state evidentiary rules: 'It has never been thought that [decisions under the Due

18   Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of

19   criminal procedure.'"). "While adherence to state evidentiary rules suggests that the trial was

20   conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when

21   state standards are violated; conversely, state procedural and evidentiary rules may countenance

22   processes that do not comport with fundamental fairness." *Jammal*, 926 F.2d at 919.

23

24

1      Accordingly, the issue before the Court is whether the trial court committed an error

2   which rendered the trial so arbitrary and fundamentally unfair that it violated due process. *Id.*;

3   *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986). "Under AEDPA, even clearly

4   erroneous admissions of evidence that render a trial fundamentally unfair may not permit the

5   grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid

6   out by the Supreme Court." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (*citing*

7   28 U.S.C. § 2254(d)). Thus, if there is no clearly established federal law as determined by the

8   Supreme Court, habeas relief is barred even if the state court erroneously admitted irrelevant or

9   prejudicial evidence. *Id.* (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

10      Petitioner alleges the state court erred by admitting prior bad act evidence under

11   Evidence Rule ("ER") 404(b) as proof of a common scheme or plan. Dkt. 3. Specifically,

12   Petitioner contends the trial court erred by allowing the state to admit evidence of a fire at S.A.'s

13   home. *See* Dkt. 17, pp. 18-21; Dkt. 21, pp. 10-12.

14      At the start of the Petitioner's trial, the trial court heard argument regarding the

15   admissibility of evidence related to a fire that occurred at S.A.'s home in September of 2010. *See*

16   Dkt. 12, Ex. 33, pp. 76-90. The trial court ruled the evidence regarding the fire was admissible

17   because, in light of the other evidence, the fire evidence showed a common scheme or plan and

18   any unfair prejudice was outweighed by the probative value. *Id.* at pp. 90-93. The trial court

19   found the evidence did not show a general propensity for misconduct or show action and

20   conformity therewith under ER 404(b). *Id.* at p. 92. Rather, the trial court found the evidence

21   admissible under an intent, plan, or common scheme. *Id.*

22      In finding the trial court did not err by admitting evidence of the fire, the state supreme

23   court stated:

24

1

2

3

4

5

6

7

8

> Mr. Parra-Interian next contends that the trial court erred in admitting the fire evidence under ER 404(b). Prior bad act evidence is admissible under ER 404(b) for limited purposes, such as proof of motive, plan, or identity. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). Before admitting ER 404(b) evidence, the trial court must find by a preponderance of the evidence that the prior bad act occurred, identify the purpose for such evidence, determine whether the evidence is relevant to an element of the charged crime, and weigh the evidence's probative value against its prejudicial effect. *Id*. The court must conduct its analysis on the record, and if the evidence is admitted the court must give limiting instruction to the jury. *Id*. Here, Mr. Parra-Interian did not object to this evidence. Failure to object to ER 404(b) evidence waivers the error. *State v. Mason*, 160 Wn.2d 910. 933, 162 P.3d 396 (2007). And in any event, evidence that the fire may have been intentionally set by someone directed by Mr. Parra-Interian was properly admitted to show common scheme or plan, intent, or motive to further harm the victim. Mr. Parra-Interian fails to show that the trial court did not engage in an adequate ER 404(b) analysis or that it did not properly instruct the jury.

9

10

Dkt. 11, Exhibit 26, pp. 4-5.

11

Petitioner alleges the state court erred by violating a state evidentiary rule. *See* Dkt. 3.

12

Petitioner challenges ER 404(b) and claims the fire at S.A.'s home was not sufficiently

13

connected to him. *See* Dkt. 17, pp. 18-21; Dkt. 21, pp. 10-12. As Petitioner is challenging the

14

trial court's decision to admit evidence under a state evidentiary rule, Petitioner has not

15

sufficiently alleged a basis for federal habeas relief. *See Estelle*, 502 U.S. at 67 (the introduction

16

of evidence in violation of state rules of evidence fails to state a constitutional ground for habeas

17

relief); *Marshall*, 459 U.S. at 438 n. 6 ("the Due Process Clause does not permit the federal

18

courts to engage in a finely-tuned review of the wisdom of state evidentiary rules").

19

To succeed on Ground 4, Petitioner must show the trial court's decision to allow

20

evidence related to a fire at S.A.'s home rendered the trial so arbitrary and fundamentally unfair

21

that it violated due process. *See Jammal*, 926 F.2d at 919. Here, the trial court admitted evidence

22

related to a fire at S.A.'s home because it tended to show an intent, plan, or common scheme. *See*

23

Dkt. 12, Ex. 33, p. 92. The trial court stated the evidence was potentially relevant because it

24

shows there was a plan in place to "get rid of the person who's the complaining witness in the

1    alleged rape and burglary." *Id.* at p. 91. There was evidence Petitioner told Ronald White that

2    Petitioner "participated in, or took part in, or caused to occur, that fire." *Id.* at p. 92. The trial

3    court determined the jury could conclude there was a common scheme or plan in place based on

4    the events. *Id.* The trial court also found the allegation of rape and the fire occurred close in time

5    and there had been an admission by Petitioner regarding the fire, and, thus, based on the

6    evidence, the trial court found the probative value of the fire evidence outweighed any unfair

7    prejudice. *Id.*

8         The burglary and rape occurred in June 2010. The trial court admitted evidence showing

9    a fire occurred at S.A.'s house in September 2010. Petitioner admitted to White he had been

10   involved in a fire at S.A.'s house in an attempt to stop S.A. from testifying against Petitioner. As

11   Petitioner was charged with both the rape of S.A. and solicitation and conspiracy to murder S.A.,

12   the evidence related to the fire at S.A.'s house could be admissible to support the State's position

13   that Petitioner intended to have S.A. murdered. *See Jammal*, 926 F.2d at 920 (holding the

14   admission of "other acts" evidence violates due process only when "there is no permissible

15   inferences the jury may draw from the evidence"). Furthermore, Petitioner was allowed to

16   present evidence showing the cause of the fire was not arson. *See* Dkt. 12, Ex. 33, p. 93; *see also*

17   Dkt. 12, Ex. 34, pp. 288-89, Ex. 39, pp. 976-77. Therefore, Petitioner has not shown evidence

18   regarding the fire at S.A.'s house rendered his trial so arbitrary and fundamentally unfair that it

19   violated his due process rights.

20        As challenges to state evidentiary rules are not sufficient bases for granting federal habeas

21   relief and as Petitioner has not shown his due process rights were violated, Petitioner fails to

22   demonstrate the state court's decision to admit evidence regarding the September 2010 fire at

23   S.A.'s home under ER 404(b) was contrary to, or an unreasonable application of, clearly

24

established federal law. *See Wallin v. Holbrook*, 2012 WL 4792935, *11-12 (W.D. Wash. May 30, 2012) (denying habeas relief on a ground alleging the state court erred by admitting evidence under Washington ER 404(b) because the admission of evidence deemed relevant under state evidentiary rules does not state a constitutional ground for habeas relief and the petitioner failed to show the admission of evidence rendered his trial fundamentally unfair or otherwise violated his constitutional rights). Accordingly, Ground 4 should be denied.

D. Ineffective Assistance of Counsel (Grounds 5, 8(b), 11, 12)

In Grounds 5, 8(b), 11, and 12, Petitioner raises several claims of ineffective assistance of counsel. *See* Dkt. 3. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v.*

1    *Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a

2    probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A]

3    court need not determine whether counsel's performance was deficient before examining the

4    prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to

5    dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

6    should be followed." *Id*. at 697.

7        1.  *Ground 5*

8        In Ground 5, Petitioner contends his trial counsel was ineffective when counsel failed to

9    investigate and call witnesses related to a fire at S.A.'s residence. Dkt. 3, pp. 29-30. The state

10   supreme court applied the standard established in *Strickland*, stating:

> Mr. Parra-Interian contends that defense counsel was ineffective in not calling
> witnesses, particularly an expert, to testify about a suspicious fire that occurred at
> the victim's residence after he was charged with the rape and burglary. The fire
> evidence was introduced in support of the conspiracy and solicitation charges,
> which were based on Mr. Parra-Interian's desire to have the victim killed so she
> would not testify. But Mr. Parra-Interian does not demonstrate how such
> testimony would have been to his benefit. To the contrary, avoiding testimony
> that would have highlighted the fire would have been a legitimate tactical choice.

Dkt. 11, Ex. 26, p. 3.

16       Here, the state court record shows the trial court heard argument regarding whether

17   evidence surrounding a fire at S.A.'s home should be introduced at trial. *See* Dkt. 12, Ex. 33, p.

18   76. In requesting that the fire evidence be excluded, Petitioner's trial counsel, Ted DeBray, told

19   the trial court he received some discovery about the fire, but did not know if it was complete

20   discovery and was not prepared to litigate all the details of the fire. *Id*. at p. 83. The State

21   admitted there was no dispute regarding the fact the cause of the fire was undetermined. *Id*. at p.

22   85. Rather, the State sought to introduce evidence of the fire to corroborate Petitioner's

23   statements to Ronald White that Petitioner had burned S.A.'s residence in an attempt to keep her

from testifying. *Id*. at pp. 85-87. Petitioner's trial counsel, Jim Morgan, asserted that, in order to adequately respond to the fire evidence, Petitioner's trial counsel would have to now attempt to interview and subpoena the fire investigators. *Id*. at p. 88. The State stated it would not object to information about the outcome of the fire investigation and would not require live testimony. *Id*. at pp. 89-90.

The trial court determined Petitioner's trial counsel had received an adequate opportunity to respond to evidence related to the fire. Dkt. 12, Ex. 33, pp. 92-93. The trial court then determined evidence related to the fire was admissible to show an intent, plan, or common scheme. *Id*.

During the trial, S.A. testified there was a fire at her home on September 3, 2010. *See* Dkt. 12, Ex. 34, p. 288. S.A. was told the "fire was deemed an arson, but with lack of evidence, they couldn't do anything about it." *Id*. at p. 289. Petitioner's trial counsel, however, questioned Detective David Voelker regarding the fire. *See id*. at Ex. 39, pp. 976-77. Detective Voelker stated the fire investigators determined the fire started in the engine compartment of S.A.'s vehicle and it was undetermined how or why the fire started. *Id*. at p. 977. He further testified the fire investigators noted there was no direct evidence of arson and did not find evidence of criminal activity. *Id*.

Petitioner argues his trial counsel's failure to investigate and introduce witnesses showing the fire was accidental fell below constitutional standards. *See* Dkt. 3, 32, 37. "To succeed on a claim that counsel was ineffective in failing to call a favorable witness, a federal habeas petitioner must identify the witness, provide the testimony the witness would have given, show the witness was likely to have been available to testify and would have given the proffered favorable testimony, and demonstrate a reasonable probability that, had such testimony been

1   introduced, the jury would have reached a verdict more favorable to the petitioner." *Young v.*

2   *Gipson*, 163 F. Supp. 3d 647, 688 (N.D. Cal. 2015).

3          Petitioner has not provided any evidence showing there were witnesses who were

4   available to testify and would have provided favorable testimony showing the fire was an

5   accident. Additionally, counsel elicited testimony showing the fire was not arson. As there was

6   evidence presented to the jury showing the fire was accidental and as Petitioner has not shown

7   additional evidence exists to support his theory regarding the cause of the fire, he fails to show

8   he was prejudiced by his trial counsels' decision to not pursue additional witnesses and evidence

9   related to the fire. *See Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003) (to establish

10  prejudice for failure to call a witness, petitioner must show that the witness would have given

11  proffered testimony and the witness's testimony would have created reasonable probability that the

12  jury would have reached a verdict more favorable to the petitioner); *Young*, 163 F. Supp. 3d at 688

13  ("A petitioner's mere speculation that the witness would have given helpful information if

14  interviewed by counsel and called to the stand is not enough to establish ineffective assistance").

15         The Court finds Petitioner failed to show the state court's conclusion finding his counsel

16  was not ineffective for failing to investigate and introduce evidence related to the cause of the

17  fire was contrary to, or was an unreasonable application of, clearly established federal law, or

18  was an unreasonable determination of the facts in light of the evidence presented in this case. *See*

19  *Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (finding the petitioner failed to show

20  counsel was ineffective for failing to interview and a call witness when the petitioner did not

21  present evidence –i.e. an affidavit from the alleged witness – showing the witness actually

22  existed and would provide helpful testimony). Accordingly, Ground 5 should be denied.

23

24

1    2.  *Ground 8(b)*

2           In Ground 8(b), Petitioner contends his trial counsel performance was deficient because

3    counsel failed to move to suppress the wiretap recordings under *Franks v. Delaware*, 428 U.S.

4    154 (1978). Dkt. 3, pp. 35-37; Dkt. 37, pp. 16-17.

5           In finding Petitioner's trial counsel's performance was not deficient, the state supreme

6    court stated:

7           Mr. Parra-Interian also claims counsel was ineffective in not challenging the
            admissibility of wire recordings of two incriminating conversations: one between
8           Mr. Parra-Interian and cooperating jail inmate Ronald White, and the other between
            Mr. Parra-Interian's wife and Mr. White. Mr. Parra-Interian contends that counsel
9           should have sought a *Franks* hearing as to whether the warrant authorizing the
            recordings was based on a knowingly false statement. But Mr. Parra-Interian fails
10          to show the actual existence of such a false statement. Simply alleging that Mr.
            White lied when he told jail staff that Mr. Parra-Interian had made incriminating
11          statements is not enough. *See Rice*, 118 Wn.2d at 886 (bare assertions and
            conclusory allegations without competent evidentiary support insufficient to merit
12          reference hearing).

13   Dkt. 11, Ex. 26, p. 4 (footnote omitted).

14          Petitioner contends at least one individual told the detective on the case, Detective David

15   Voelker, that Ronald White was attempting to frame Petitioner. Dkt. 37, p. 17. He asserts that, if

16   Detective Voelker knew White was attempting to frame Petitioner and did not disclose the

17   information, there was a *Franks* violation. *Id*. Petitioner maintains the evidence obtained during the

18   wire recording would be been suppressed had his trial counsel requested a *Franks* hearing and, at

19   the hearing, "pointed out" that detectives concealed White's motives and took action regarding

20   White's "Department of Corrections [("DOC")] hold." *Id*.[6] Petitioner, however, does not cite, and

21   the Court does not find, any evidence showing Detective Voelker knew White was attempting to

22   _____

23          [6] Petitioner does not explain what actions detectives took regarding White's DOC "hold." *See* Dkt. 37, p.
     17. However, it appears Petitioner is asserting detectives orchestrated the removal of a DOC "hold" that was keeping
24   White in custody so White could participate in a recorded conversation with Petitioner's wife. *See* Dkt. 3, 37.

1  frame Petitioner and failed to disclose this information or had control over White's release from

2  custody.

3      The record shows William Womack, an inmate housed with Petitioner and White at the

4  time of the wiretap, "tried to inform" Detective Voelker in the middle of November 2011 that

5  White was going to "set [Petitioner] up by falsly (sic) testifying against [Petitioner]." Dkt. 37-1, p.

6  135. As Womack only "tried" to inform Detective Voelker, Petitioner has failed to show Detective

7  Voelker *knew* White was trying to frame Petitioner and failed to disclose that information in the

8  application for the wiretap. Detective Voelker also testified he did not offer White any deals for his

9  cooperation and told White he "could not make any deal with him." Dkt. 12, Ex. 39, p. 923.

10     Petitioner speculates Detective Voelker may have had information showing White was

11  attempting to frame Petitioner and failed to disclose this information in the application for the

12  wiretap. Petitioner also speculates detectives took actions to ensure White was immediately

13  released from custody. However, Petitioner fails to provide any evidence to support his

14  allegations that Detective Voelker, or any other detective, knew White was attempting to frame

15  Petitioner or took actions to release White from custody. As such, Petitioner fails to show he was

16  prejudiced by his trial counsel's failure to request a *Franks* hearing.

17     Petitioner has not shown the state court's conclusion finding his counsel did not provide

18  ineffective assistance was contrary to, or was an unreasonable application of, clearly established

19  federal law, or was an unreasonable determination of the facts in light of the evidence presented

20  in this case. Accordingly, Ground 8(b) should be denied.

21         3. *Ground 11*

22     In Ground 11, Petitioner alleges he was entrapped when Ronald White approached

23  Petitioner and persuaded Petitioner to commit the crimes of solicitation and conspiracy to

24

REPORT AND RECOMMENDATION - 32

1    commit murder. *See* Dkt. 3. In his Response, Petitioner modified his entrapment claim to assert a

2    claim of ineffective assistance of counsel because trial counsel did not present an entrapment

3    defense to the jury. *See* Dkt. 32, pp. 29-32. Petitioner's Response is not the proper pleading to

4    raise grounds for relief. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507–08 (9th Cir. 1994). As

5    the claim of ineffective assistance of counsel for failing to raise an entrapment defense was

6    raised for the first time in the Response, the Court finds this claim should be dismissed. *See*

7    *Lopez v. Dexter*, 375 F. App'x 724, at * 1 (9th Cir. 2010) (ruling that district court had

8    appropriately rejected petitioner's claim on the basis that it improperly surfaced for the first time

9    in his Traverse to the state's Answer).

10        Even if Petitioner had properly alleged a claim of ineffective assistance of counsel based

11    on counsel's failure to raise an entrapment defense, Petitioner fails to show he is entitled to

12    habeas relief on this ground. In considering whether counsel was ineffective for failing to present

13    an entrapment defense, the state supreme court found:

14            Mr. Parra-Interian further asserts that defense counsel was ineffective in not raising
            an entrapment defense based on his interactions with Mr. White. But an entrapment
15          defense would have conflicted with Mr. Parra-Interian's defense of general denial.
            *See State v. McClam*, 69 Wn. App. 885, 889, 850 P.2d 1377 (1993) (defendant who
16          denies offense cannot claim entrapment, since defense of entrapment necessarily
            assumes defendant committed charged act). And an entrapment defense was not
17          feasible in any event because the State did not induce Mr. Parra-Interian to commit
            a crime; to the contrary, he initiated the incriminating statements justifying the body
18          wire warrant and subsequent recordings. *See* RCW 9A.16.070 (entrapment occurs
            when law enforcement induces a person to commit a crime he or she would
19          otherwise not commit). Mr. Parra-Interian's claim of ineffective assistance of
            counsel fails in all respects.
20
     Dkt. 11, Ex. 26, p. 4.
21
         Here, Petitioner's trial theory was that he was innocent because he did not have a meeting
22
     of the minds with White regarding the alleged solicitation to murder S.A. *See e.g.* Dkt. 12, Ex.
23
     42, pp. 1384-1411 (closing argument). For example, Petitioner's counsel argued Petitioner did
24

1    not speak English well enough to understand the difference between asking White to take S.A.

2    out of town or murder S.A. and never directly instructed White to murder S.A. *See id.*

3    Petitioner's trial counsel also alluded to an entrapment defense when he argued Petitioner did not

4    solicit White to commit murder because White led the discussion with Petitioner regarding the

5    plan to murder S.A. *Id.* at Ex. 42, pp. 1389-93.

6          As Petitioner's trial theory was that he did not understand he was soliciting White to kill

7    S.A., an entrapment defense, which would have required Petitioner to admit the elements of the

8    solicitation and conspiracy to commit murder crimes, was contrary to Petitioner's trial theory.

9    Petitioner has, therefore, failed to show his trial counsel was ineffective for failing to raise an

10   entrapment defense. *See Aros v. Stewart*, 39 Fed. App'x. 514, 516 (9th Cir. 2002) (finding

11   counsel was not ineffective for failing to raise an entrapment defense that would have required

12   admitting to the elements of the crime and would have been contrary to the petitioner's case

13   theory that he did not commit the crime). The Court finds Petitioner has not shown the state

14   court's conclusion that Petitioner's counsel was not ineffective for failing to raise an entrapment

15   defense was contrary to, or was an unreasonable application of, clearly established federal law,

16   or was an unreasonable determination of the facts in light of the evidence presented in this case.

17   Accordingly, Ground 11, as stated in the Response, should be denied.

18          4.   *Ground 12*

19          In Ground 12, Petitioner lists, without explanation, eight reasons why his trial counsel

20   was ineffective. Dkt. 3, pp. 43-46. Petitioner argues, in a conclusory manner, all the identified

21   errors prejudiced the outcome of his trial. *See* Dkt. 37, pp. 20-22. Petitioner does not adequately

22   overcome the presumption that, under the circumstances, the challenged actions might be

23   considered sound trial strategy. Rather, Petitioner provides conclusory allegations that specific

24

1   actions or inactions taken by his trial counsel were not sound trial strategy and prejudiced the

2   outcome of his trial. *See* Dkt. 3, 32, 37. For example, Petitioner asserts his trial counsel was

3   ineffective for failing to object to improper testimony. *See* Dkt. 3, p. 43. Petitioner, however, does

4   not explain what testimony was improper, why it was improper, and how Petitioner's trial

5   counsel's conduct surrounding the alleged improper testimony was deficient. *See* Dkt. 3, 32, 37.

6   The same is true regarding Petitioner's assertion that trial counsel was ineffective when he failed to

7   object to a jail video. *See* Dkt. 3, 32, 37.

8       Petitioner also contends his trial counsel was ineffective for failing to request a Rule 3.5

9   hearing regarding the fire incident, obtain a handwriting expert, or object to evidence related to

10  S.A.'s sister. Dkt. 3, pp. 43-46. Petitioner again fails to show the actions taken by his trial counsel

11  were not sound trial strategy. Furthermore, Petitioner has not shown the outcome of the trial would

12  have changed; rather, Petitioner provides conclusory allegations that he was prejudiced by his

13  counsel's performance. This is not sufficient to show ineffective assistance of counsel. *See Alcala*,

14  334 F.3d at 872-73.

15      Additionally, Petitioner maintains his trial counsel was ineffective when he failed to

16  request a mistrial based on juror misconduct "when a few jurors might have, but probably were

17  talking about a picture." Dkt. 3, p. 44. Petitioner does not identify the picture or explain how a

18  picture resulted in juror misconduct. *See id*. Therefore, Petitioner has not shown there was any

19  juror misconduct and has not shown he was prejudiced by his trial counsel alleged failure to

20  request a mistrial. *See id*.; Dkt. 32, 37. Petitioner also reasserts his claims that trial counsel was

21  ineffective when he did not call witnesses related to the fire and for failing to request a suppression

22  hearing. *See* Dkt. 3, pp. 43-46. However, Petitioner has again failed to show he was prejudiced by

23  trial counsel's conduct.

24

1    As Petitioner's conclusory claims of ineffective assistance of counsel are not sufficient to

2    show counsel's performance was deficient or prejudicial to the outcome of Petitioner's trial,

3    Petitioner fails to show he is entitled to relief on Ground 12. *See Jones v. Gomez*, 66 F.3d 199, 205

4    (9th Cir. 1995) (finding conclusory allegations that trial counsel provided ineffective assistance of

5    counsel fell "far short of stating a valid claim of constitutional violation" and did not entitle the

6    petitioner to an evidentiary hearing); *Sutton v. Marshall*, 2009 WL 2047636, at *4 (C.D. Cal. July

7    9, 2009) ("Conclusory allegations of ineffective assistance of counsel which are not supported by

8    a statement of specific facts do not warrant habeas relief."). Accordingly, Ground 12 should be

9    denied.

10    5.  *Conclusion*

11    For the above stated reasons, the Court finds Petitioner has failed to show he is entitled to

12    habeas relief on his claims of ineffective assistance of counsel. Accordingly, the Court finds

13    Grounds 5, 8(b), 11, and 12 should be denied.

14    E.  Confrontation Clause (Ground 7)

15    In Ground 7, Petitioner alleges his Confrontation Clause rights were violated when the

16    State played recorded statements to the jury without providing Petitioner an opportunity for

17    cross-examination. Dkt. 3, pp. 33-34.

18    The Sixth Amendment's Confrontation Clause confers upon the accused, "[i]n all

19    criminal prosecutions, ... the right ... to be confronted with the witnesses against him." U.S.

20    Const. Amend. VI. In *Crawford v. Washington*, the Supreme Court held the Confrontation

21    Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial

22    unless he was unavailable to testify, and the defendant had a prior opportunity for cross-

23    examination." 541 U.S. 36, 54-55 (2004). Only testimonial statements cause the declarant to be a

24

1    "witness" within the meaning of the Confrontation Clause. *See id.* at 51. "It is the testimonial

2    character of the statement that separates it from other hearsay that, while subject to traditional

3    limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v.*

4    *Washington*, 547 U.S. 813, 821 (2006).

5         Here, Petitioner contends his right to confront was violated when the body wire recording

6    of a conversation between his wife, Yolanda Ayala, and an informant, Roland White, was played

7    for the jury. In finding his Confrontation Clause rights were not violated, the state supreme court

8    stated:

9         Mr. Parra-Interian next argues that admitting the body wire recording of the
          conversation between his wife and Mr. White violated his right of confrontation,

10        citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177
          (2004), and like authorities. But *Crawford* applies only to testimonial hearsay.

11        Mr. Parra-Interian does not show that any of the statements in the recordings were
          testimonial. And recordings of conversations that convey threats of harm, as

12        occurred in this instance, are admissible under RCW 9.73.030(2).

13    Dkt. 11, Ex. 26, p. 5.

14        Petitioner has not shown, nor does the Court find, clearly established Supreme Court law

15    holding a body wire recording of a conversation between a third-party and an informant is

16    testimonial. Rather, the Supreme Court has found statements unwittingly made to a government

17    informant or statements from one prisoner to another are "non-testimonial." *See id*. at 825 (citing

18    Supreme Court cases which found statements were "clearly nontestimonial"). "[T]he Ninth

19    Circuit has [also] found 'private' conversations between friends, acquaintances, or even between

20    co-conspirators, are 'non-testimonial.'" *Meraz v. Pfeiffer*, 2017 WL 7101154, at *19, n.4 (C.D.

21    Cal. Dec. 12, 2017), *report and recommendation adopted*, 2018 WL 587846 (C.D. Cal. Jan. 29,

22    2018) (citing *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005); *Jensen v. Pliler*, 439

23    F.3d 1086, 1089-90 (9th Cir. 2005)). Further, White testified at Petitioner's trial and, thus,

24

1    Petitioner had an opportunity to cross-examine White. *See* Dkt. 12, Ex. 38, pp. 831-95. There is

2    also no indication Petitioner was unable to present testimony from Ayala at trial regarding the

3    statements made to White.[7]

4          The Court finds Petitioner has failed to show the state court's conclusion finding his

5    Confrontation Clause rights were not violated was contrary to, or was an unreasonable

6    application of, clearly established federal law, or was an unreasonable determination of the facts

7    in light of the evidence presented in this case. *See Stenson v. Lambert,* 504 F.3d 873, 881 (9th

8    Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court

9    adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an

10   unreasonable application of, clearly established federal law."). Accordingly, Ground 7 should be

11   denied.

12         F.   Prosecutorial Misconduct (Ground 9)

13         In Ground 9, Petitioner contends the State engaged in prosecutorial misconduct regarding

14   information the prosecutor revealed, or failed to reveal, about the State's informant, Ronald

15   White. *See* Dkt. 37, pp. 18-20; *see also* Dkt. 3, pp. 37-38. In determining if a prosecutor's

16   conduct rises to the level of prosecutorial misconduct, the relevant inquiry is whether the

17   prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a

18   denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*,

19   567 U.S. 37, 45 (2012) (per curiam) (*Darden* standard is "clearly established Federal law" for

20

21         [7] Petitioner contends he was forced to choose between marital privileges and cross-examining his wife,
     Ayala. *See* Dkt. 3, p. 34. However, martial privilege applies to communications between spouses. *See United States*
22   *v. Banks*, 556 F.3d 967, 974 (9th Cir. 2009) (internal quotations omitted) ("The marital communications privilege
     protects from disclosure private communications between spouses[.]"). There is no martial privilege for
     communications between one's spouse and a third-party. *See United States v. Marashi*, 913 F.2d 724, 729 (9th Cir.
23   1990) (martial "privilege extends only to words or acts intended as communication to the other spouse" and does not
     extend to statements made before a third party). Further, "marital communications privilege does not apply to
     statements made in furtherance of joint criminal activity." *Id*. at 731. As Petitioner has not shown Ayala and White's
24   conversation is protected by martial privilege, Petitioner's argument is unpersuasive.

1    purposes of 28 U.S.C. § 2254(d)). A trial error is presumed to be harmless unless the error had

2    "substantial or injurious effect or influence in determining the jury's verdict." *Brecht v.*

3    *Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a

4    real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420

5    (9th Cir. 1990).

6         In determining the State did not engage in prosecutorial misconduct, the state court of

7    appeals stated:

8         Seventh, he argues that the State engaged in misconduct by offering White a plea
          deal for his cooperation in wearing the body wire and by introducing evidence
9         from him. This does not constitute prosecutorial misconduct.

10   Dkt. 11, Ex. 24, p. 3. Additionally, the state supreme court found:

11        Mr. Parra-Interian also asserts claims of governmental misconduct in various
          forms, primarily in connection with the body wire recording and search warrant.
12        But he fails to show the existence of any impropriety.

13   *Id*. at Ex. 26, p. 7.

14        From Petitioner's pleadings, it appears he is arguing the State engaged in misconduct

15   when it failed to provide information to the trial court, Petitioner, and the jury regarding White.

16   *See* Dkt. 3, 32, 37. However, Petitioner does not provide any specific evidence showing what

17   information was withheld from the judge, the jury, or Petitioner regarding Mr. White's

18   relationship with the State. Rather, Petitioner provided a list of actions he believes rose to the

19   level of prosecutorial misconduct and provides conclusory allegations regarding the alleged

20   misconduct. *See* Dkt. 3, pp 37-39; Dkt. 32, pp. 12-24, Dkt. 37, pp. 18-20. This is not sufficient to

21   show his conviction resulted in a denial of due process.

22        For example, Petitioner states:

23        Even more damning to the prosecution's case, had the prosecutor revealed to the
          judge responsible for authorizing the wire that Mr. White had a lengthy criminal
24

1
2

> history and there was a deal in place with Mr. White in exchange for his work
> with the state, there is a possibility that the wire would never have been
> authorized, thus completely undermining the prosecution's case on the solicitation
> and conspiracy counts.

3
4

Dkt. 37, p. 19. However, this statement appears to be speculation. There is no evidence regarding

5

what information was provided to the authorizing judge and Petitioner contends there is only a

6

possibility the wiretap would not have been authorized. Therefore, there is no evidence of a *real*

7

possibility the outcome of the trial would have changed based on the alleged information that

8

was or was not provided to the authorizing judge.

9

    Petitioner also argues the State had documents in its possession and he deserved an

10

opportunity to present relevant evidence to the jury, including, but not limited to, any promises

11

made by detectives to White regarding a DOC hold and statements from other inmates to

12

detectives that White intended to frame Petitioner by falsely testifying against him. Dkt. 37, p.

13

19. Petitioner, however, does not show the State was aware of the alleged information and failed

14

to provide the information to Petitioner. *See id*. Petitioner makes conclusory assertions the said

15

evidence would have substantially impacted the jury's assessment of Petitioner and White's

16

recorded conversation regarding Petitioner soliciting White to murder S.A. *See id.*[8] However,

17

Petitioner has not shown the alleged prosecutorial misconduct infected the trial in such a way

18

that Petitioner's conviction resulted in a denial of due process.

19

    Petitioner has not provided facts that point to a real possibility of constitutional error as a

20

result of the State's alleged misconduct surrounding its relationship with White. Therefore,

21

Petitioner has failed to show the state court's conclusion finding Petitioner's prosecutorial

22

misconduct claims are meritless was contrary to, or was an unreasonable application of, clearly

23

24

---

[8] It appears Petitioner is arguing a *Brady* violation, which will also be addressed in this Report and Recommendation.

1  established federal law, or was an unreasonable determination of the facts in light of the evidence

2  presented in this case. Accordingly, Ground 9 should be denied.

3      G.  <u>*Brady* Violations (Grounds 9, 14)</u>

4      As discussed above, in Ground 9, Petitioner asserts the State engaged in misconduct related

5  to revealing, or failing to reveal, information about Ronald White. Dkt. 3, 32, 37. Petitioner also

6  appears to present arguments in Ground 9 implying the State committed violations under *Brady v.*

7  *Maryland*, 373 U.S. 83 (1963), when it failed to disclose information to Petitioner regarding White.

8  *See* Dkt. 3, 37. Additionally, in Ground 14, Petitioner asserts the State committed *Brady* violations

9  when it failed to disclose an exculpatory video related to the fire at S.A.'s home. *See* Dkt. 3, pp.

10  47-48.

11      A prosecutor has an affirmative duty to disclose evidence favorable to a defendant. *Kyles v.*

12  *Whitley*, 514 U.S. 419, 432 (1995). In *Brady*, the Supreme Court held "the suppression by the

13  prosecution of evidence favorable to an accused upon request violates due process where the

14  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

15  the prosecution." 373 U.S. at 87. "There are three components of a *Brady* violation: 'The evidence

16  at issue must be favorable to the accused, either because it is exculpatory, or because it is

17  impeaching; that evidence must have been suppressed by the State, either willfully or

18  inadvertently; and prejudice must have ensued.'" *United States v. Price*, 566 F.3d 900, 907 (9th

19  Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

20      To determine if the suppressed evidence is material, "the question is whether admission of

21  the suppressed evidence would have created a reasonable probability of a different result, so the

22  defendant must show only that the government's evidentiary suppression undermines confidence

23  in the outcome of the trial." *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011), *as*

24

1  *amended* (citation and internal quotation marks omitted). "To determine whether prejudice exists,

2  we look to the materiality of the suppressed evidence." *Id.* The duty to disclose is limited to

3  material evidence favorable to the defense which is deemed to be in the prosecutor's possession,

4  custody, or control. *Kyles*, 514 U.S. at 437-38. However, "the prosecutor's duty to disclose under

5  *Brady* is limited to evidence a reasonable prosecutor would perceive at the time as being material

6  and favorable to the defense. *Woods v. Sinclair*, 764 F.3d 1109, 1127 (9th Cir. 2014).

7         In determining the State did not violate *Brady*, the state supreme court stated:

8         Mr. Parra-Interian further asserts that the State violated its disclosure obligations
          under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

9         But he fails to identify potentially useful or exculpatory evidence that may have
          been withheld in violation of *Brady*. To the contrary, Mr. Parra-Interian cites

10        police reports made available to defense counsel.

11 Dkt. 11, Ex. 26, p. 6.

12         1.  *Ground 9*

13         In Ground 9, Petitioner asserts he should have had an opportunity to present evidence in

14 the State's possession to the jury regarding White, implying the State did not disclose the

15 evidence to Petitioner. *See* Dkt. 3, pp. 37-39; Dkt. 37, p. 19. Petitioner states there is evidence

16 regarding detectives' agreements with White and statements detectives received from inmates

17 which show White intended to frame Petitioner.

18         First, Petitioner does not cite to evidence showing the State was in possession of and

19 failed to disclose evidence regarding any promise made to White by detectives regarding his

20 cooperation in the wiretap. In fact, there is no evidence detectives made promises to White for his

21 cooperation in the wiretap. While the prosecution offered White a plea deal in exchange for his

22 testimony at Petitioner's trial, this evidence was presented to the jury. At trial, Detective David

23 Voelker, the detective who met with White regarding the wiretaps, testified he did not offer White

24

1  any deals for his cooperation and told White he "could not make any deal with him." Dkt. 12, Ex.

2  39, p. 923. White testified there was no plea bargain in place when he agreed to wear the wire and

3  record Petitioner. *Id.* at Ex. 38, pp. 865-67. Petitioner's counsel, however, cross-examined White

4  concerning the plea agreement the State offered to White in exchange for his testimony at

5  Petitioner's trial. *See id.* at Ex. 38, pp. 865-69, 888-90. Petitioner's trial counsel also presented

6  evidence during the trial showing White has a reputation for being untruthful. *See id.* at Ex. 39, p.

7  1016.

8          Petitioner has failed to show detectives made promises to White for his participation in the

9  wiretap recordings between White and Petitioner. Additionally, as the jury heard evidence

10  regarding White's motives for testifying, Petitioner has not shown any alleged evidence would

11  have changed the outcome of his case.

12          Second, Petitioner argues the State violated *Brady* by failing to disclose inmate statements

13  showing White was framing Petitioner. Dkt. 3, pp. 37-39; Dkt. 37, p. 19. Petitioner cites to two

14  declarations to support this claim. *See* Dkt. 37-1, pp. 135-37. William Womack, an inmate housed

15  with Petitioner and White at the time of the wiretap, submitted a declaration, dated October 14,

16  2015, stating he heard White state he was going "set [Petitioner] up by falsly (sic) testifying against

17  [Petitioner] to deal his way out of his current conviction." *Id.* at p. 135. Womack "tried to inform"

18  Detective Voelker in the middle of November 2011 about White's statements. *Id.* Further,

19  Womack told Petitioner's attorney, Mr. Morgan, everything Womack heard White say and told

20  Mr. Morgan he would be willing to testify on Petitioner's behalf. *Id.*

21          On November 8, 2016, Christopher Robinson declared he was housed with Petitioner and

22  White in Cowlitz County Jail from September to December of 2012. Dkt. 37-1, pp. 136-37.

23  Robinson stated he would talk with White and Womack and, during one conversation, White stated

24

1  he was going to lie to police or get Petitioner and his wife to incriminate themselves so he could

2  escape his "impending sentence." *Id*. at p. 136. Robinson did not state he informed anyone of this

3  information. *See id*.

4      The evidence cited by Petitioner does not show the State had knowledge White was

5  attempting to frame Petitioner. Womack attempted to tell Detective Voelker, but does not state he

6  succeeded in informing Detective Voelker of White's statements. Robinson does not state he told

7  anyone that White was attempting to frame Petitioner. Further, Womack told Mr. Morgan, one of

8  Petitioner's trial attorneys, about White's alleged plan to frame Petitioner. As such, prior to his

9  trial, Petitioner obtained the information he claims the State failed to disclose.

10     Based on the record, Petitioner has failed to show the State was in possession of and failed

11 to disclose evidence showing White was attempting to frame Petitioner. Additionally, because

12 the evidence shows Petitioner's defense team had information from Womack that White was

13 attempting to frame Petitioner, Petitioner has failed to show he was prejudiced by any alleged

14 failure by the State to disclose information regarding the inmate statements.

15     For the above stated reasons, Petitioner fails to demonstrate the state court's conclusion that

16 the State did not commit a *Brady* violation was contrary to, or an unreasonable application of,

17 clearly established federal law, or was an unreasonable determination of the facts in light of the

18 evidence presented in this case.  *See Amado v. Gonzalez*, 758 F.3d 1119, 1135 (9th Cir. 2014)

19 ("defense counsel cannot lay a trap for prosecutors by failing to use evidence of which defense

20 counsel is reasonably aware for, in such a case, the jury's verdict of guilty may be said to arise

21 from defense counsel's stratagem, not the prosecution's failure to disclose"); *Runningeagle v.*

22 *Ryan*, 686 F.3d 758, 769 (9th Cir. 2012) ("[T]o state a *Brady* claim, [petitioner] is required to do

23 more than 'merely speculate' about what [non-testifying jailhouse informant] told prosecutors.");

24

1  *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (rejecting *Brady* claim based on "mere

2  suppositions" with "absolutely no evidence" that the allegedly withheld material, if it existed,

3  "would have contained exculpatory evidence"). Accordingly, Ground 9 should be denied.

4         2.  *Ground 14*

5       In Ground 14, Petitioner contends the State committed a *Brady* violation when it failed to

6  produce evidence related to a fire at S.A.'s home. Dkt. 3, pp. 47-48. Specifically, Petitioner

7  contends there is a video related to the fire that would have impeached several witnesses. *Id*.

8       Evidence was presented at trial showing there was a vehicle fire at S.A.'s residence on

9  September 3, 2010. *See* Dkt. 12, Ex. 33, pp. 92-93, Ex. 34, pp. 288-89, Ex. 39, pp. 976-77. A

10 police report from the fire incident indicates S.A. reported she thought the fire was started by

11 Petitioner because she saw Petitioner's vehicle, a maroon Suburban, drive by her home around

12 midnight and 2:00 A.M. Dkt. 11, Ex. 20; *see also* Dkt. 37-1, p. 126. Officer Philip Weismiller

13 contacted Anthony James Harris, an individual who lived in the area, regarding a video

14 surveillance system at installed at Harris's home. Dkt. 11, Ex. 20; *see also* Dkt. 37-1, p. 126.

15 Officer Weismiller asked Harris to check his video camera system for footage of a maroon

16 Suburban driving by his home around midnight and 2:00 A.M. Dkt. 11, Ex. 20; *see also* Dkt. 37-

17 1, p. 126. The police report states Officer Weismiller contacted Harris by phone; Harris reported

18 he checked the videos from 11:30 P.M. to 12:30 A.M and 1:30 A.M. and 2:30 A.M. and did not

19 see a maroon Suburban on the street in question. Dkt. 11, Ex. 20; *see also* Dkt. 37-1, p. 126.

20 There is no evidence Harris provided a video to police or to the State.

21      Petitioner has failed to show the State had possession, custody, or control of any video

22 evidence related to the fire at S.A.'s home. *See* Dkt. 3, 32. In fact, there is no evidence a video

23 exists. The police report Petitioner relies on indicates Officer Weismiller was informed by Harris

24

1  that there was no maroon Suburban on his video surveillance system. However, there is no

2  indication Officer Weismiller received a copy of Harris's surveillance video. Further, Petitioner

3  fails to show how the alleged video is material or prejudicial to the outcome of Petitioner's trial or

4  appeals. *See* Dkt. 3, 32. Petitioner does not assert the State failed to provide the police report

5  documenting Officer Weismiller's contact with Harris to Petitioner's trial counsel. Petitioner's trial

6  counsel also elicited testimony from a detective showing there was no evidence of criminal activity

7  surrounding the fire or evidence showing the fire was arson. *See* Dkt. 12, Ex. 39, p. 977. Thus, the

8  jury heard evidence that Petitioner was not involved in the fire at S.A.'s home.

9          Petitioner fails to show the alleged video existed and, that if it did exist and had been

10  disclosed, would have made a material difference in the outcome of his trial. As such, Petitioner

11  fails to demonstrate the state court's conclusion that the State did not commit a *Brady* violation

12  was contrary to, or an unreasonable application of, clearly established federal law, or was an

13  unreasonable determination of the facts in light of the evidence presented in this case. *See*

14  *Placencia v. Scribner*, 2010 WL 2367474, at *18 (C.D. Cal. April 23, 2010) (finding no *Brady*

15  violation when the petitioner failed to show photographs and video existed, were in the

16  prosecution's possession, and would have made any difference to the outcome of the trial).

17  Accordingly, Ground 14 should be denied.

18          3.   *Conclusion*

19          For the above stated reasons, the Court finds Petitioner has failed to show he is entitled to

20  habeas relief on his *Brady* violation claims. Accordingly, the Court finds Grounds 9 and 14

21  should be denied.

22

23

24

1    H.  <u>Right to Counsel (Ground 13)</u>

2         In Ground 13, Petitioner states his Sixth Amendment right to counsel was violated when

3    he was "interrogated" by Ronald White, on behalf of the State, without counsel present. Dkt. 3,

4    p. 46. Specifically, Petitioner states he had been appointed counsel, arraigned, and was being

5    held in-custody when White "interrogated" him. *Id.*

6         "The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy

7    the right ... to have the Assistance of Counsel for his defence." *Texas v. Cobb*, 532 U.S. 162, 167

8    (2001) (internal quotations and alterations omitted). The Supreme Court has explained:

9         The Sixth Amendment right [to counsel] ... is offense specific. It cannot be invoked
          once for all future prosecutions, for it does not attach until a prosecution is
10        commenced, that is, at or after the initiation of adversary judicial criminal
          proceedings—whether by way of formal charge, preliminary hearing, indictment,
11        information, or arraignment.

12   *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citations and internal quotation marks omitted).

13   A defendant has "a right to counsel only on the offenses for which he had been indicted, and on

14   any other offenses that constitute[s] the 'same offense' under the *Blockburger* test." *United States*

15   *v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003), *as amended* (May 19, 2003).[9]

16        In finding Petitioner's right to counsel was not violated when White engaged Petitioner in a

17   recorded conversation, the state supreme court stated:

18        Mr. Parra-Interian next insists his right to counsel was violated when Mr. White
          engaged him in a recorded conversation. But Mr. Parra-Interian had not yet been
19        accused of or charged with the conspiracy and solicitation charges arising from
          those conversations. His right to counsel had not been triggered in relation to those
20        matters when he spoke with Mr. White.

21   Dkt. 11, Ex. 26, p. 6.

22   _____

23        [9] In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court explained that "where the same
     act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine
     whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does
24   not." *Cobb*, 532 U.S. at 173 (internal quotations omitted).

1    Here, the state court record shows Petitioner spoke with White on two occasions about

2   killing S.A. before December 5, 2011, the date White was released from custody. *See* Dkt. 12, Ex.

3   37, pp. 649, 659-66, Ex. 38, pp. 844-55, Ex. 39, pp. 925-56. Petitioner was then charged with

4   solicitation to commit murder and conspiracy to commit murder on December 8, 2011. *See* Dkt.

5   43-1, Ex. 46. The record shows Petitioner spoke with White prior to being charged with solicitation

6   to commit murder and conspiracy to commit murder. Further, the charges of solicitation to commit

7   murder and conspiracy to commit murder do not constitute the same offense as the rape and

8   burglary charges, for which Petitioner had been charged with at the time he made the statements to

9   White.[10]

10    As Petitioner had not been charged with solicitation to commit murder or conspiracy to

11   commit murder at the time he made the incriminating statements to White, his right to counsel

12   under the Sixth Amendment had not attached. Therefore, Petitioner fails to demonstrate the state

13   court's conclusion that Petitioner's right to counsel was not violated when he was "interrogated"

14   by White was contrary to, or an unreasonable application of, clearly established federal law, or was

15   an unreasonable determination of the facts in light of the evidence presented in this case. *See*

16   *Texas v. Cobb*, 532 U.S. 162, 176 (2001) (stating the Supreme Court "held that a defendant's

17

18    ───────────────

       [10] Under Washington State law,
19   A person is guilty of rape in the second degree when the person engages in sexual intercourse with another person
     and the victim was "incapable of consent by reason of being physically helpless or mentally incapacitated." RCW
20   9A.44.050(1)(b);
     A "person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property
21   therein, he or she enters or remains unlawfully in a building and . . . assaults any person." RCW 9A.52.020(1)(b);
     "A person is guilty of criminal solicitation when, with intent to promote or facilitate the commission of a crime, he
22   or she offers to give or gives money or other thing of value to another to engage in specific conduct which would
     constitute such crime or which would establish complicity of such other person in its commission or attempted
23   commission had such crime been attempted or committed." RCW § 9A.28.030(1); and
     "A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or
24   she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them
     takes a substantial step in pursuance of such agreement." RCW § 9A.28.040(1).

1    statements regarding offenses for which he had not been charged were admissible notwithstanding

2    the attachment of his Sixth Amendment right to counsel on other charged offenses"); *Maine v.*

3    *Moulton*, 474 U.S. 159, 180 (1985) ("to exclude evidence pertaining to charges as to which the

4    Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply

5    because other charges were pending at that time, would unnecessarily frustrate the public's interest

6    in the investigation of criminal activities"). Accordingly, Ground 13 should be denied.

7         I.   Right to Fair Trial (Ground 18(a))

8         In Ground 18(a), Petitioner asserts he was denied a fair trial when the State knowingly

9    used a racist informant. Dkt. 3, pp. 54-55. Specifically, Petitioner contends the jury should have

10   been provided with an instruction regarding the credibility of an informant witness. Dkt. 32, p.

11   59.

12        A state trial court's failure to give a jury instruction does not alone raise a ground

13   cognizable in federal habeas corpus proceedings. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th

14   Cir. 1988). The omission of an instruction is less likely to be prejudicial than a misstatement of

15   the law. *Walker v. Endell*, 850 F.2d 470, 475–76 (9th Cir.1987). A habeas petitioner whose claim

16   involves failure to give a particular instruction, as opposed to a claim that involves a

17   misstatement of the law in an instruction, bears an "especially heavy burden." *Villafuerte v.*

18   *Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155

19   (1977)). The need for a specific instruction must be analyzed in light of the circumstances in the

20   case. Other credibility instructions combined with arguments by counsel have been found

21   sufficient to make the cautionary instruction unnecessary. *United States v. Bosch*, 914 F.2d 1239,

22   1248 (9th Cir. 1990). Whether a constitutional violation has occurred will depend upon the

23

24

1   evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67

2   F.3d 734, 745 (9th Cir.1995).

3          In finding Petitioner was not entitled to relief regarding Petitioner's assertion that his

4   rights were violated because of White's white supremacist affiliation, the state supreme court

5   stated:

6          Finally, Mr. Parra-Interian argues that he was the victim of racism due to Mr.
           White's alleged white supremacist ties . . . But the jury was informed of Mr.
7          White's character, which the jury could consider in assessing his credibility. . . .
           Mr. Parra-Interian fails to show actual prejudice or a complete miscarriage of
8          justice on these claims.

9   Dkt. 11, Ex. 26, p. 7.

10         Here, Petitioner complains only of the trial court's failure to give a specific jury

11  instruction regarding the credibility of an informant. *See* Dkt. 32, p. 59. This claim, standing

12  alone, is not cognizable in federal habeas. *See Dunckhurst*, 859 F.2d at 114. Furthermore,

13  Petitioner has not shown the failure to give a specific jury instruction denied Petitioner the right

14  to a fair trial. The trial court instructed the jury regarding the credibility of witnesses. Dkt. 12,

15  Ex. 42, pp. 1307, 1311-12. Additionally, information regarding White's criminal history,

16  associations, and incentives to testify were addressed during direct and cross examinations. *See*

17  Dkt. 12, Ex. 38, pp. 839-92, Ex. 39, pp. 924, 997-99. As such, White's biases and prejudices

18  were presented during the trial and the jurors were able to consider this evidence when deciding

19  the weight to give White's testimony. Petitioner, thus, has not shown he was denied a fair trial as

20  a result of the trial court's failure to give a specific jury instruction.

21         The failure to give a specific jury instruction does not state a cognizable habeas claim and

22  Petitioner has not shown his due process rights were violated when the trial court did not provide

23  a specific jury instruction regarding the credibility of informant witnesses. Therefore, Petitioner

24

1   fails to demonstrate the state court's conclusion that Petitioner's right to a fair trial was not violated

2   due to White's white supremacist ties was contrary to, or an unreasonable application of, clearly

3   established federal law, or was an unreasonable determination of the facts in light of the evidence

4   presented in this case. Accordingly, Ground 18(a) should be denied.

5         J.   Impartial Jury (Ground 18(b))

6         In Ground 18(b), Petitioner contends his right to a fair trial was violated when a

7   prospective juror engaged in juror misconduct and the entire jury was not dismissed. Dkt. 3, pp.

8   54-55. The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of

9   impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "The bias or prejudice of

10   even a single juror would violate [a defendant's] right to a fair trial." *Dyer v. Calderon*, 151 F.3d

11   970, 973 (9th Cir. 1998). "Due process means a jury capable and willing to decide the case solely

12   on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to

13   determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217

14   (1982). To succeed on an impartial juror claim, "a defendant usually bears the burden of

15   demonstrating that the challenged juror was biased[.]" *United States v. Mitchell*, 568 F.3d 1147,

16   1151 (9th Cir. 2009).

17         The state supreme court considered Petitioner's assertion that he was denied an impartial

18   jury. *See* Dkt. 11, Ex. 26, p. 7. The state supreme court found:

19         Mr. Parra-Interian argues that he was victim of racism . . . because of a prospective
            juror's comment about her daughter being the victim of a Mexican American. . . .

20         [T]he prospective juror was excused. Mr. Parra-Interian fails to show actual
            prejudice or a complete miscarriage of justice on [this] claim[].

21

22   *Id.*

23         In this case, the state court record shows the trial court instructed the prospective jurors to

24   refrain from discussing the case with anybody at the start of jury selection. Dkt. 12, Ex. 44, p.

1524. During jury selection, the trial court asked the jury pool if any prospective jurors had any close friends or relatives who had been involved in a similar type of incident as Petitioner's case. Dkt. 12, Ex. 44, p. 1628. One prospective juror stated his daughter had a similar incident but stated he did not want to speak about the incident in open court. *Id*. at p. 1629. Later, the trial court and counsel questioned the prospective juror outside the presence of the jury pool, wherein the prospective juror explained his daughter had been raped by a Mexican. *Id*. at pp. 1649-55. The prospective juror was excused. *See id*. at pp. 1650-59.

There is no evidence the impaneled jury showed prejudice toward Petitioner. Rather, Petitioner points to evidence which shows a prospective juror expressed prejudice and, because of his prejudice, was excused from serving on the jury. There is no indication the prospective juror explained his prejudice to any other prospective juror. In fact, the prospective juror expressed his concerns regarding his ability to be impartial privately to the trial court and counsel. As such, Petitioner has not shown Sixth Amendment right to a fair trial by a panel of impartial, indifferent jurors was violated.

Therefore, Petitioner fails to demonstrate the state court's conclusion that Petitioner's right to a fair trial was not violated when a prospective juror showed prejudice was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented in this case. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988) ("Any claim that the jury was not impartial ... must focus not on [the jurors who were excused], but on the jurors who ultimately sat."); *U.S. v. Lindsey*, 634 F.3d 541, 554 (9th Cir. 2011) (finding a defendant's claim that the district erred by dismissing two jurors failed because the defendant "presented no evidence that the seated jurors in his case were partial or otherwise failed to perform their duties in any way"). Accordingly, Ground 18(b) should be denied.

1    K.  <u>Uncognizable Claims (Grounds 8(a), 10, 11, 15, 16, 17, 19)</u>

2    In Grounds 8(a), 10, 15, 16, and 17, Petitioner alleges his Fourth Amendment rights were

3    violated; in Ground 11, Petitioner contends he was entrapped; in Ground 16, Petitioner

4    challenges his conditions of confinement; and, in Ground 19, Petitioner asserts his due process

5    rights were violated during a civil forfeiture action. *See* Dkt. 3. These seven grounds are not

6    cognizable under § 2254.

7        1.  *Unlawful Search and Seizure (Grounds 8(a), 10, 15, 17)*

8    Petitioner contends his Fourth Amendment rights were violated when: (1) the State failed

9    to provide a sufficient probable cause affidavit in support of the authorization for a wiretap

10   (Ground 8(a)); (2) the State provided false and unreliable information to the state court when

11   obtaining a search warrant (Ground 10); (3) Petitioner was unlawfully arrested (Ground 15);  and

12   (4) the State unlawfully seized items from Petitioner's home while he was in jail on unrelated

13   charges (Ground 17). Dkt. 3, pp. 35, 39-41, 52-54.

14   "The Fourth Amendment assures the 'right of the people to be secure in their persons,

15   houses, papers, and effects against unreasonable searches and seizures.'" *Stone v. Powell*, 428

16   U.S. 465, 482 (1976). Courts will exclude evidence in order to effectuate these rights. *Id.*

17   However, the exclusionary rule itself is not a personal constitutional right. *Id.* at 486. The rule is

18   a judicially created remedial device designed to deter Fourth Amendment violations by law

19   enforcement personnel rather than "to redress the injury to the privacy of the victim of the search

20   or seizure, for any '[r]eparation comes too late.'" *Id.* at 486 (quoting *Linkletter v. Walker*, 381

21   U.S. 618, 637 (1965)). Because of this, the Supreme Court held that "where the State has

22   provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

23   may not be granted federal habeas corpus relief on the ground that evidence obtained in an

24

1  unconstitutional search or seizure was introduced at his trial." *Powell*, 428 U.S. at 494; *see also*

2  *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

3        The federal court's inquiry is whether the petitioner had the opportunity to litigate his

4  claim, not whether he did or even whether the claim was correctly decided. *Ortiz–Sandoval v.*

5  *Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.

6  1990)); *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983). To obtain relief, a petitioner must

7  demonstrate the state courts have not afforded him a full and fair opportunity to litigate his

8  Fourth Amendment claims. *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir.1993). If a state

9  provides the processes whereby a defendant can obtain full and fair litigation of a Fourth

10  Amendment claim, then the petition will be denied whether or not the defendant employs those

11  processes. *See Gordon*, 895 F.2d at 613–14 (holding that the determinative factor for the court

12  was that California law allowed for motion to suppress evidence, not whether defendant litigated

13  upon such grounds).

14        Here, Petitioner had an opportunity to litigate his unlawful search and seizures claims in

15  the state courts. "The Washington Criminal Rules for Superior Court provide for a full and fair

16  opportunity to litigate Fourth Amendment claims." *See Hunter v. Miller-Stout*, 2013 WL

17  1966168, at *14 (W.D. Wash. Apr. 23, 2013), *report and recommendation adopted*, 2013 WL

18  1964928 (W.D. Wash. May 10, 2013); *see also* Washington State Criminal Procedure Rule CrR

19  3.6. Furthermore, Petitioner had an opportunity to raise the Fourth Amendment claims on direct

20  appeal or in a PRP. Indeed, Petitioner raised these grounds in his consolidated PRPs. *See* Dkt.

21  11, Exs. 19, 20. In considering Petitioner's Fourth Amendment claims, the state supreme court

22  stated:

23

24

1        Mr. Parra-Interian also asserts claims of governmental misconduct in various forms, primarily in connection with the body wire recording and search warrant. But he fails to show the existence of any impropriety.

2

3  Dkt. 12, Ex. 26, p. 7.

4       As Petitioner had the opportunity to pursue and, in fact, pursued the unlawful search and

5  seizures claims, Grounds 8(a), 10, 15, and 17 are not cognizable under § 2254. *See Tisnado v.*

6  *United States*, 547 F.2d 452, 456 (9th Cir. 1976) ("a federal court may not grant either § 2254 or

7  § 2255 habeas corpus relief on the basis that evidence obtained in an unconstitutional search or

8  seizure was introduced, respectively, at a state or federal trial where the defendant was provided

9  an opportunity to litigate fully and fairly his fourth amendment claim before petitioning the

10  federal court for collateral relief").

11         2.  *Entrapment (Ground 11)*

12       In Ground 11, Petitioner alleges he was entrapped when detectives directed Ronald White

13  to engage in a recorded conversation with Petitioner regarding killing S.A. Dkt. 3, pp. 48-50. The

14  entrapment defense "is not of a constitutional dimension." *United States v. Russell,* 411 U.S. 423,

15  430–33 (1973). Rather, like the Fourth Amendment claims, it is a court-created limitation on

16  governmental activity. *United States v. Emmert,* 829 F.2d 805, 808 n. 1 (9th Cir. 1987).

17  Therefore, entrapment does not raise a cognizable federal constitutional claim. As such, Ground

18  11 is not cognizable under § 2254. *See People of Territory of Guam v. Teixeira*, 859 F.2d 120,

19  122 (9th Cir. 1988) ("the defense of entrapment is analogous to other doctrines-such as the

20  exclusion of evidence illegally obtained . . . which are designed solely for the purpose of

21  regulating the conduct of the police); *Noble v. Harrison*, 491 F.Supp.2d 950, 961 n. 7 (C.D.Cal.

22  2007) (citing *Benson v. Carter*, 396 F.2d 319, 322 (9th Cir. 1968)) (finding the misapplication of

23  law relating to entrapment does not raise a cognizable federal constitutional claim).

24

1          3.   *Conditions of Confinement (Ground 16)*

2          In Ground 16, Petitioner contends his conditions of confinement violate the First, Fifth,

3    Eighth, and Fourteenth Amendment rights. Dkt. 3, pp. 50-52; Dkt. 32, pp 52-56. An "action

4    lying at the core of habeas corpus is one that goes directly to the constitutionality of the

5    prisoner's physical confinement itself and seeks either immediate release from that confinement

6    or the shortening of its duration. With regard to such actions, habeas corpus is now considered

7    the prisoner's exclusive remedy." *Preiser v. Rodriguez*, 411 U.S. 475, 503 (1973) (internal

8    quotation omitted). "A civil rights action, in contrast, is the proper method of challenging

9    conditions of confinement." *Badea v. Cox*, 931 F.3d 573, 574 (9th Cir. 1991).

10         Here, Petitioner is challenging the conditions of his confinement in Ground 16. He does

11   not challenge his convictions or sentence. *See* Dkt. 3. As such, Ground 16 does not lie in habeas

12   corpus. *See Heck v. Humphrey,* 512 U.S. 477, 481 (1994) ("[C]onstitutional claims that merely

13   challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or

14   injunctive relief, fall outside" the core of habeas corpus); *Alcala v. Rios*, 434 F. App'x 668, 669

15   (9th Cir. 2011) (affirming the district court's finding that a case was not cognizable in habeas

16   when the petition challenged only the conditions of confinement).

17         4.   *Forfeiture (Ground 19)*

18         In Ground 19, Petitioner argues his due process rights were violated because he was not

19   provided sufficient notice of or the right to be heard regarding the forfeiture of items seized from

20   his home. *See* Dkt. 3, pp. 55-57. Petitioner's challenge to a civil forfeiture is not cognizable on

21   federal habeas review because § 2254 provides relief based on a showing that an individual "is in

22   custody in violation of the Constitution or laws or treaties of the United States." Section 2254

23   "explicitly requires a nexus between the petitioner's claim and the unlawful nature of the

24

1  custody." *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir.2010) (citing *Dickerson v. United States,* 530

2  U.S. 428, 439 n. 3 (2000)). A challenge to civil forfeiture order does not provide such a nexus.

3  *Bailey*, 599 F.3d at 980–81; *see also United States v. Finze*, 428 F. App'x 672, 677 (9th Cir.

4  2011) (claim challenging forfeiture order is not a cognizable § 2255 claim because it does not

5  seek release from custody); *Tharpe v. Quarterman*, 2007 WL 2491855, at *1 (N.D.Tex. Sept. 5,

6  2007) ("A § 2254 petition may not be used as a vehicle for challenging a civil forfeiture

7  judgment or decree entered by a state court."). Therefore, as Petitioner requests habeas relief

8  because he was not provided proper notice and the right to be heard regarding the forfeiture of

9  his assets, Ground 19 is not cognizable under § 2254. *See Gupta v. Beard*, 2015 WL 1470859, at

10  *54 (C.D. Cal. Mar. 30, 2015) (finding civil forfeiture claim not cognizable in a § 2254

11  proceeding because, even if the petitioner was successful on the claim, he would have to serve

12  the rest of his custodial sentence in the same manner).

13         5.  *Conclusion*

14        For the above stated reasons, Grounds 8(a), 10, 11, 15, 16, 17, and 19 should be

15  dismissed as these seven grounds are not cognizable under § 2254.

16  **III.**    **Evidentiary Hearing**

17        The decision to hold an evidentiary hearing is committed to the Court's discretion.

18  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

19  hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

20  entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

21  available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

22  state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

23  entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

24

1    record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

2    court is not required to hold an evidentiary hearing." *Id.* The Court finds it is not necessary to

3    hold an evidentiary hearing in this case because, as discussed in this Report and

4    Recommendation, Petitioner's grounds may be resolved on the existing state court record.

5    **IV.    Certificate of Appealability**

6        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

7    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

8    (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

9    may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

10   constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

11   that jurists of reason could disagree with the district court's resolution of his constitutional

12   claims or that jurists could conclude the issues presented are adequate to deserve encouragement

13   to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,

14   529 U.S. 473, 484 (2000)).

15       No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

16   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

17   concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

18   **V.    Conclusion**

19       The Court concludes Grounds 1-7, 8(b), 9, 12-14, 18(a), and 18(b) should be denied and

20   Grounds 8(a), 10, 11, 15-17, and 19 should be dismissed. The Court also finds no evidentiary

21   hearing is necessary. Therefore, the Court recommends the Petition be denied and a certificate of

22   appealability be denied.

23

24

1          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3    6. Failure to file objections will result in a waiver of those objections for purposes of de novo

4    review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

5    imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April

6    5, 2019 as noted in the caption.

7          Dated this 20th day of March, 2019.

8

9

David W. Christel
10                                                            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24